194 N.J. Super. 192 (1984)
476 A.2d 813
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
JAMES RUSSELL BILL, DEFENDANT-APPELLANT, CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 18, 1984.
Decided June 13, 1984.
*194 Before Judges MATTHEWS, J.H. COLEMAN and GAULKIN.
Lester J. DaCosta argued the cause for appellant Bill.
Dorothy G. Turi, Deputy Attorney General, argued the cause for respondent State (Irwin I. Kimmelman, Attorney General, attorney).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
Defendant was convicted of fourth degree aggravated assault under the First and Second Counts of an indictment. He was also convicted under the Third Count of possession of a gun for unlawful purposes. Under the First and Second Counts, the trial judge downgraded the fourth degree assault convictions to disorderly persons offenses. Defendant was sentenced on those two counts to six months in the county jail. On the Third Count he was sentenced to a term of eight years with three years of parole ineligibility. The trial judge concluded *195 that possession of a weapon for unlawful purposes constituted a Graves Act offense.
Defendant contends that the Third Count did not charge a Graves Act offense and that the evidence was insufficient to warrant a conclusion that the shotgun in question was loaded. We find both contentions to be without merit. In addition, we find that there was substantial evidence from which the jury could have concluded that defendant was guilty on all three counts. Defendant claims that the Third Count should have merged with the two counts of aggravated assault. The Third Count involving possession of the shotgun for unlawful purposes refers to the purpose for which it was possessed, and not how it was used. Under the facts adduced here, the possession of the shotgun was a distinct offense whose time and scope exceeded that of the aggravated assault; there could have been no merger.
With respect to defendant's argument as to the failure to send the shells marked in evidence into the jury room, the trial judge was obviously following safety precautions. We find no error.
The remaining contentions raised by defendant we find to be clearly without merit. R. 2:11-3(e)(2).
The State has cross-appealed arguing that it was improper for the judge to downgrade the two fourth degree aggravated assault charges to simple assault. The trial judge determined that objective danger, and not the victim's perception of danger, was paramount when determining whether the offense was aggravated or simple assault; accordingly, he reasoned that the jury must find that the gun was loaded because only a loaded gun is actually dangerous enough to cause injury.
When the Legislature initially proposed the Penal Code, it was determined that the character of both the individual and offense must be considered and that, because crimes involving firearms were more dangerous than crimes committed without *196 firearms, they deserved special rules as well as some type of enhanced punishment. The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission (1971), Vol. II: Commentary, proposed § 2C:12-2 at 179, proposed § 2C:43-7 at 318-319, and proposed § 2C:44-3 at 329-332. When the Code was enacted, however, neither the special rule proposed in N.J.S.A. 2C:12-2 or an enhanced sentencing section was included. The subsequent enactment of the Graves Act (L. 1981, c. 31) met this need and clearly supports the view that crimes committed with firearms are more serious offenses. Without question, the intent of the Graves Act is to punish perpetrators more severely if they commit specifically enumerated crimes with firearms. State v. Des Marets, 92 N.J. 62, 68, 72 (1983). One of the enumerated crimes is aggravated assault. N.J.S.A. 2C:43-6c. Because of the recent escalation of crimes threatening physical violence, we think it is clear that the Legislature intended to deter their commission by insuring incarceration for those persons who arm themselves with firearms before going forth to commit crimes. State v. Des Marets, 92 N.J. at 68.
To contend that a person who assaults another with a firearm is guilty of a disorderly persons offense solely because the gun is not actually loaded ignores the established legislative intent to punish crimes committed with firearms more severely than crimes committed without firearms. Hence, we cannot read the language in N.J.S.A. 2C:12-1b(4), "whether or not the actor believes [the gun] to be loaded," as requiring that the gun used in the assault actually be loaded.
The trial judge below relied on State v. Diaz, 190 N.J. Super. 639 (Law Div. 1983). Diaz held that N.J.S.A. 2C:12-1b(4) required that the gun used must have been loaded. In reaching that holding the court determined that N.J.S.A. 2C:12-1b(4) establishes an objective standard because of the holding in State v. Butler, 89 N.J. 220 (1982), and the language in the statute, "whether or not the actor believes [the gun] to be *197 loaded." 190 N.J. Super. at 643-644. Diaz focuses on Model Penal Code § 211.2 and two Pennsylvania cases construing the Pennsylvania reckless endangerment statute,[1] to support its position.
State v. Butler, relied upon by the judge in Diaz, interprets the definition of a deadly weapon in the context of the robbery statute, whereby the presence of the deadly weapon enhances the punishment by increasing the offense to a first degree crime. See N.J.S.A. 2C:15-1b; N.J.S.A. 2C:14-2a(4). The definition of a deadly weapon did not, at that time, include precise language that subjective belief that the weapon was capable of producing death or serious bodily injury was sufficient. N.J.S.A. 2C:11-1(c). The Court in Butler found that the Legislature intended an objective test; otherwise, there would have been explicit language to the contrary. 89 N.J. at 229-230. We note that since Butler, the Legislature has amended N.J.S.A. 2C:11-1(c) to include specific language permitting a subjective analysis. 89 N.J. at 229 n. 3.
N.J.S.A. 2C:12-1b(4) proscribes the knowing pointing of a firearm at another. A firearm is defined as:
any hand gun, rifle, shotgun, machine gun, automatic or semi-automatic rifle, or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectible ball, slug, pellet, missile or bullet ... by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances. It shall also include, without limitation, any firearm which is in the nature of an air gun, spring gun or pistol or other weapon of a similar nature . .. ejecting a bullet or missile smaller than three-eighths of an inch in diameter, with sufficient force to injure a person. [N.J.S.A. 2C:39-1f]
*198 Thus, any weapon from which a projectile may be fired, or is in the nature of a pistol or other weapon, is sufficient. We conclude that the Legislature intended that both loaded and unloaded firearms be considered when ascertaining guilt for pointing a firearm at another.
We do not find that the phrase "whether or not the actor believes [the gun] to be loaded" in N.J.S.A. 2C:12-1b(4) supports a conclusion that the gun must actually be loaded. That language does not refer to the condition of the firearm, but merely negates the possible defense that because the actor believed the gun was unloaded he cannot be found to have the required culpability, knowledge. The drafters of the Penal Code apparently agreed with such an interpretation. When commenting on the proposed N.J.S.A. 2C:12-2 they suggest that a special rule would be established presuming recklessness and danger when one knowingly points a firearm at another "without regard to the actor's belief as to whether or not the gun is loaded." The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission (1971), Vol. II: Commentary, proposed 2C:12-2 at 179. Once an actor knowingly points his firearm at another person under circumstances manifesting extreme indifference to the value of human life, he has committed the offense.
We believe that Diaz's reliance on Model Penal Code § 211.2 and the Pennsylvania courts' construction of the Pennsylvania reckless endangerment statute is mistaken. See Diaz, 190 N.J. Super. at 643. N.J.S.A. 2C:12-1b(4) is not patterned exclusively on Model Penal Code § 211.2.
Consequently, we disapprove of State v. Diaz as an erroneous interpretation of N.J.S.A. 2C:12-1b(4). We reverse the trial judge's downgrading of the offenses charged in the First and Second Counts of the indictment to simple assaults. The judgment under review is modified by reinstating the convictions for fourth degree aggravated assault, and as so modified, is affirmed. Because the convictions on the First and Second *199 Counts should not have been reduced to simple assaults, the case is remanded to the Law Division for resentencing on the First and Second Counts. We do not retain jurisdiction.
NOTES
[1] 18 Pa. C.S.A. § 2705

"A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."
§ 2705 is based on MPC § 211.2. The Pennsylvania legislature specifically did not adopt the second sentence of § 211.2 which would impose criminal liability for pointing an unloaded weapon. Commonwealth v. Trowbridge, 261 Pa.Super. 109, 395 A.2d 1337, 1340-1341 (Super.Ct. 1978).