**UNITED STATES of America, Appellee,**

v.

**David RAY, A/K/A David Young, Appellant.**

**No. 92–3261.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 13, 1993.

Decided April 22, 1994.

Edward C. Sussman, appointed by the court, argued the cause and filed the briefs for appellant.

Barbara K. Bracher, Asst. U.S. Atty., argued the cause for appellee. With her on the brief were J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, John R. Fisher, Thomas C. Black and Edward F. McCormack, Asst. U.S. Attys.

Before: GINSBURG and RANDOLPH, Circuit Judges, and HUBERT L. WILL,* Senior District Judge.

Opinion for the court filed by Circuit Judge RANDOLPH.

Opinion concurring in part and dissenting in part filed by Senior District Judge WILL.

RANDOLPH, Circuit Judge:

Within one month David Ray robbed the same bank twice. Both times he approached a teller and ordered her to turn over cash or he would "blow [her] head off." The tellers involved did not see a weapon or the outline of one. Both said Ray "moved his hands around a lot," putting one hand in his pocket and removing it. When the police arrested Ray several days after the second robbery, they found no weapon. The driver of the get-away car in the first robbery, who testified for the prosecution pursuant to a plea bargain, said that he had not seen Ray with a gun.

The jury convicted Ray of two counts of aggravated bank robbery, in violation of 18 U.S.C. § 2113(d).[1] The issue is whether the

---

* Of the United States District Court for the Northern District of Illinois, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. As the judgment of conviction reflects, the jury also necessarily convicted Ray of two counts of bank robbery in violation of 18 U.S.C. § 2113(a), which provides:

Whoever, by force and violence, or by intimidation, takes or attempts to take, from the person or presence of another any property or money or any other thing of value belonging

trial court correctly charged the jury on the elements of that offense. The crime of bank robbery occurs when an individual obtains or attempts to obtain money from a federally insured bank "by force and violence, or by intimidation," 18 U.S.C. § 2113(a). The more serious offense (an additional maximum of five years' imprisonment and a $5,000 fine) of aggravated bank robbery occurs when the robber, while violating § 2113(a), also "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device." Explaining the language from § 2113(d) just quoted, the court told the jury: "the government must prove that the defendant during the commission of the bank robbery committed acts or said words that would have caused an ordinary person reasonably to expect to die or face serious injury by the defendant's use of a dangerous weapon or device."

The instruction authorized the jury to convict on the aggravated bank robbery charges regardless whether Ray had a weapon hidden in his pocket. Everything turned on what a reasonable person would perceive from Ray's threats and actions. Nothing depended on whether Ray actually had a weapon or other object, whether he displayed any object, or whether he could have carried out his threats.[2]

### I

■ We will begin by assuming that Ray did not have a weapon during the robberies. Even so, we can see an argument in favor of the district court's view of § 2113(d). It

proceeds this way. In terms of danger, there is no meaningful distinction between Ray and a robber brandishing a toy replica of a pistol. Both accomplish their crime by inducing fear and apprehension. Because they are convincing, both commit an assault by placing others in "immediate apprehension of personal injury." *Ladner v. United States,* 358 U.S. 169, 173, 79 S.Ct. 209, 212, 3 L.Ed.2d 199 (1958). Neither can carry out his threat to kill. Yet lives may be endangered in both instances, and for the same reason: the robber's threat may provoke a violent response. This prospect is enough, according to *McLaughlin v. United States,* 476 U.S. 16, 17–18 & n. 3, 106 S.Ct. 1677, 1678 n. 3, 90 L.Ed.2d 15 (1986), to render an unloaded firearm a "dangerous weapon," and it is also enough to make a wooden gun "dangerous" within § 2113(d)'s meaning. *See United States v. Martinez-Jimenez,* 864 F.2d 664, 668 (9th Cir.), *cert. denied,* 489 U.S. 1099, 109 S.Ct. 1576, 103 L.Ed.2d 942 (1989).[3] There is no difference in culpability between Ray and the bank robber displaying a toy pistol. Neither may have used a "dangerous weapon," that is, "an article that is typically and characteristically dangerous" such as a 9 millimeter semi-automatic pistol. *McLaughlin,* 476 U.S. at 17, 106 S.Ct. at 1678. But both used a "device." A "device" may be an object, as in "a computer is a complicated device." The word, however, is also commonly used (in the securities laws for example) to denote a scheme to deceive.[4] *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 197–99, 96 S.Ct. 1375, 1382–84, 47 L.Ed.2d 668 (1976). Devices of the latter sort can be

---

to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association ... [s]hall be fined not more than $5,000 or imprisoned not more than twenty years, or both.
18 U.S.C. § 2113(d) reads:
 Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

**2.** The prosecution, in its brief, suggested that the portion of the instruction quoted in the text dealt only with the "intimidation" element of § 2113(a), not the "use of a dangerous weapon or device" element of § 2113(d). This is an

impossible reading. The court said the "fourth [element] in the armed bank robbery refers to the weapon" and the quotation in the text is the court's description of "the fourth element."

**3.** The § 2113(d) phrase—"by the use of a dangerous weapon or device"—modifies both "assaults any person" and "puts in jeopardy the life of any person." *Simpson v. United States,* 435 U.S. 6, 11 n. 6, 98 S.Ct. 909, 912 n. 6, 55 L.Ed.2d 70 (1978). "Dangerous" modifies both "weapon" and "device." *McLaughlin,* 476 U.S. at 18 n. 3, 106 S.Ct. at 1678 n. 3.

**4.** Unaccountably, the prosecution waited until oral argument to offer this interpretation of "device."

"dangerous." Ray's was for the reasons already mentioned. Thus, Ray violated § 2113(d) by conveying the impression that he had a gun, just as the robber with the toy gun violated § 2113(d).

The argument, though respectable, encounters several difficulties. It makes the unsupported assumption that, in terms of danger, there is no significant difference between the two robberies; it blurs any distinction between § 2113(a) and § 2113(d); and it does not come to grips with the precise holding of *McLaughlin* regarding the prospect of a violent response. As to *McLaughlin,* the Court wrote: "the *display* of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue." 476 U.S. at 17–18, 106 S.Ct. at 1678. The Court dropped a footnote in the middle of this sentence indicating that "an *apparently* dangerous article (such as a wooden gun)" would also be " 'dangerous' within the meaning of the statute." *Id.* at 18 n. 3, 106 S.Ct. at 1678 n. 3. We have italicized the key words. They make the point that "use of a dangerous weapon or device" occurs when the criminal displays an ostensibly dangerous weapon during the robbery. It is the brandishing or displaying, in other words, that the Court said heightened the danger in *McLaughlin* to the point where Congress deemed enhanced punishment under § 2113(d) appropriate.

Justice Stevens, writing for the Court in *McLaughlin,* of course chose his words carefully. He drew the line we have described at the urging of the United States. The Solicitor General, through an example, represented the government's position as follows: "Robbers frequently pass notes to tellers demanding money and suggesting that they are armed, although they may be unarmed. In such cases, Section 2113(a) clearly applies and Section 2113(d) does not." Brief for the United States at 18, *McLaughlin* (No. 85–5189). The Solicitor General's explanation for this reading of § 2113 is of such importance, and so totally contradicts the United States Attorney's stance here, that it deserves full quotation:

Even in the case of a robber who is in fact armed, there are situations where Section 2113(a) applies although Section 2113(d) may not. For example, if a robber approaches a teller and demands money, without displaying a weapon, it appears that the robber would not be subject to punishment under Section 2113(d), even if in fact the robber has a concealed weapon.[17] The reason for that, in the language of the statute, is that the robber has not "used" the weapon to "assault" anyone, as Section 2113(d) requires.[18] By keeping his weapon concealed, the robber has not created the sort of charged atmosphere likely to provoke violence described by the Fourth Circuit in [*United States v.*] *Bennett* [, 675 F.2d 596 (4th Cir.), *cert. denied,* 456 U.S. 1011[, 102 S.Ct. 2306, 73 L.Ed.2d 1307] (1982) ]. A robber who might have a gun in his pocket may inspire some apprehension, but certainly not to the same degree as a robber who has a gun in his hand, especially one who is pointing it at someone. Thus there is much less danger that a guard or a passing policeman will reflexively fire, endangering bank employees and customers. Furthermore, any danger of pistol whipping is at least less imminent when a gun is not on display. In short, the brandishing of a gun creates special dangers, and it is reasonable to construe Section 2113(d) as being addressed to that added danger.[19] So construed, Section 2113(d) is clearly not at all redundant with Section 2113(a).

17. See *United States v. Wardy,* 777 F.2d 101, 105 (2d Cir.1985) [, *cert. denied,* 475 U.S. 1053 [, 106 S.Ct. 1280, 89 L.Ed.2d 587] (1986) ] ("if the police apprehended a bank robber during the course of a robbery and subsequently discovered that he had carried a gun concealed in his belt or in a shoulder holster, a conviction under § 2113(d) would probably be unwarranted").

18. It appears that Congress is of the view that something more than the carrying of a gun is required to establish its use. In response to this Court's decisions[,] *Simpson v. United States,* 435 U.S. 6 [, 98 S.Ct. 909, 55 L.Ed.2d 70] (1978), and *Busic v. United States,* 446 U.S. 398 [, 100 S.Ct. 1747, 64 L.Ed.2d 381] (1980), Congress amended 18 U.S.C. 924(c) in 1984 to provide an additional penalty of five years' imprisonment for anyone who "uses or carries" a firearm during a crime of violence, including a "crime of violence which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device." Thus, the additional penalty of Section 924(c) now

applies even though the defendant is convicted under a provision like Section 2113(d) that provides for an enhanced penalty for the use of a dangerous weapon or device. In spelling that out in the legislative history, in fact, Congress used Section 2113(d) as an example, stating that a person convicted under Section 2113(d) would also be subject to five years' imprisonment under Section 924(c) if the dangerous weapon or device was a firearm. S.Rep. 98–225, 98th Cong., 1st Sess. 313–314 (1983). In its example, the Senate report referred to "using a gun * * * by pointing it at a teller or otherwise displaying it." *Id.* at 314. In a footnote, the report noted that "evidence that the defendant had a gun in his pocket but did not display it, or refer to it, could nevertheless support a conviction for 'carrying' a firearm" under Section 924(c). S.Rep. 98–225, *supra*, at 314 n. 10. Thus, Congress appeared to understand, as the language of Section 924(c) suggests, that there is a distinction between carrying a gun and using a gun.

19. Carrying a firearm also warrants additional punishment, but Section 924(c) is addressed to that problem. See note 18, *supra*.

*Id.* at 18–20.

■ The Solicitor General was rightly concerned about § 2113(d)'s engulfing § 2113(a). By definition, every violation of § 2113(a) involves the use of "force and violence, or intimidation." [5] It therefore seems likely that every bank robbery entails the prospect of a response, by police or guards or bank employees or customers or onlookers, that could turn violent. If that prospect renders whatever the robber does or says a "dangerous device" under § 2113(d), then § 2113(a) would be subsumed. Furthermore, it is not self-evident that the danger stemming from the reaction of law enforcement officers is appreciably different when the criminal is using force, violence or intimidation to carry out the robbery, than when he is deceiving bank employees into believing he has a concealed weapon.

The Supreme Court in *McLaughlin*, 476 U.S. at 18 n. 3, 106 S.Ct. at 1678 n. 3, and in *Simpson*, 435 U.S. at 10 n. 4, 98 S.Ct. at 911–12 n. 4, placed weight on an amendment to the bill that became § 2113(d) inserting the

words "or device" after "dangerous weapon," and on the accompanying exchange of remarks on the House floor. Representative Blanton expressed concern that courts might not consider certain instrumentalities weapons. He gave three examples: "a bottle of nitroglycerin," "a bottle of water asserted to be nitroglycerin, which would have the same effect psychologically on the minds of the people in the bank," and "one of these new kind of Indiana six shooters carved out of a piece of wood with a pocket knife." 78 CONG. REC. 8132–33 (1934). The illustrations contemplate that the robbers will display the "devices," and thus tend to support Ray's argument that a "device" is a physical object, not a scheme. We do not, however, pretend that the floor debate on § 2113 is conclusive, or even nearly so. The mention of some examples does not necessarily exclude the existence of others. *See Pittston Coal Group v. Sebben,* 488 U.S. 105, 115, 109 S.Ct. 414, 420–21, 102 L.Ed.2d 408 (1988); *Cabazon Band of Mission Indians v. National Indian Gaming Comm'n,* 14 F.3d 633, 637 (D.C.Cir. 1994). And there is no indication that members of Congress other than those who spoke on the House floor shared Representative Blanton's understanding. *See Simpson v. United States,* 435 U.S. at 17–18, 98 S.Ct. at 915–16 (Rehnquist, J., dissenting).

At any rate, the prosecution here is unable to cite even one reported case after *McLaughlin* in which a § 2113(d) conviction of a bank robber, who revealed no physical object, has been sustained merely on the basis that his words and actions were a "device." This is hardly surprising given the position of the United States in *McLaughlin* on the meaning of § 2113(d), a position the Supreme Court adopted. United States Attorneys who have gotten the word would prosecute such robberies only under § 2113(a).[6] The closest case is *United States*

---

5. Robbery incorporates the elements of assault with those of larceny, that is, frightening a person by force and violence, or intimidation so that the person hands over property. *See United States v. Jackson,* 562 F.2d 789, 803 (D.C.Cir. 1977); *Bradley v. United States,* 447 F.2d 264, 274 (8th Cir.1971), *vacated as moot,* 404 U.S. 567, 92 S.Ct. 746, 30 L.Ed.2d 722 (1972); *United States v. Marshall,* 427 F.2d 434, 437 (2d Cir.

1970); 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 8.11(d) (1986); ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 343–49 (3d ed. 1982).

6. "Once the Solicitor General has taken a position with respect to a pending case, that position will, in most cases, become the Government's position as a matter of course." 1 Op.Off.Legal

*v. Benson,* 918 F.2d 1 (1st Cir.1990).[7] The bank robber in *Benson,* while saying he had a gun, purposely exposed a metallic object in his pocket, which the teller believed to be a gun. (It turned out to be a knife.) In sustaining the § 2113(d) conviction, the court refused to draw a distinction between a "peek and a display," finding that the "manner in which the dangerous weapon or device is displayed" is not critical, a remark suggesting that at least there must be some sort of display. 918 F.2d at 3. The court added, in a footnote, that "subsection 2113(d) would not apply where there was no more than a threat to use violence and no dangerous device was used." 918 F.2d at 4 n. 7. At no point did the *Benson* court indicate that § 2113(d) could be violated regardless whether the robber had a dangerous weapon in his possession. And the footnote just quoted contradicts the prosecution's contention here that a threat—"I'll blow your head off"— itself constitutes use of a dangerous device. On the other hand, *United States v. Perry,* 991 F.2d 304 (6th Cir.1993), is against the prosecution, as it candidly acknowledges. The defendant in *Perry* walked into the bank carrying a wooden gun concealed in his

pants. During the ensuing robbery he never revealed the fake weapon, although he attempted to pull it out (it was stuck). The court held that "notwithstanding the teller's fear that the defendant might have been armed, Perry's possession of a nongenuine gun which was concealed throughout the robbery did not constitute 'use of a dangerous weapon or device' under § 2113(d)." 991 F.2d at 309.[8] In a passage inconsistent with the jury instruction given at Ray's trial, the Sixth Circuit added that Congress could have provided "for enhanced statutory penalties whenever the perpetrator of a § 2113(a) ... offense caused his victim to fear that the victim's life might be endangered because of a dangerous weapon. [In light of the language of § 2113(d) ] Congress did not." 991 F.2d at 310.

There must be a line between § 2113(d) and the lesser offense proscribed in § 2113(a). It is not the danger associated with bank robberies that warrants enhanced punishment under § 2113(d). It is the *increased* danger caused by robberies committed in a certain way.[9] Interpreting

Counsel 228, 234 (1977). The qualification—"in most cases"—takes into account the possibility that the Attorney General or the President might "reject the Solicitor General's independent and expert legal counsel in favor of other legal advice or policy considerations." *Id.*

7. In each of the other cases cited by the prosecution involving 18 U.S.C. § 2113(d), the defendant displayed an ostensibly dangerous weapon, *see United States v. Spedalieri,* 910 F.2d 707, 709 (10th Cir.1990); *United States v. Medved,* 905 F.2d 935 (6th Cir.1990), *cert. denied,* 498 U.S. 1101, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991); *United States v. Cannon,* 903 F.2d 849, 854 (1st Cir.), *cert. denied,* 498 U.S. 1014, 111 S.Ct. 584, 112 L.Ed.2d 589 (1990); *United States v. Martinez–Jimenez,* 864 F.2d 664, 665 (9th Cir.), *cert. denied,* 489 U.S. 1099, 109 S.Ct. 1576, 103 L.Ed.2d 942 (1989), or used a real gun, *United States v. Crouthers,* 669 F.2d 635, 638 (10th Cir. 1982).

8. *Perry* relied on the statement from *United States v. Wardy,* 777 F.2d 101, 105 (2d Cir.1985), *cert. denied,* 475 U.S. 1053, 106 S.Ct. 1280, 89 L.Ed.2d 587 (1986), quoted at note 17 of the Solicitor General's brief in *McLaughlin* (No. 85–5189), and on the following statement from *United States v. Cobb,* 558 F.2d 486, 489 (8th Cir. 1977): "We know of no case however, which has permitted the jury to convict under § 2113(d) on

the mere inference that a partially concealed object was a loaded gun.... The testimony regarding the holes within the wrapped newspaper was sufficient to establish the element of intimidation and fear necessary for both § 2113(a) and § 2113(d); it was, however, insufficient to establish that a gun was in fact used in the robbery."

9. The United States Sentencing Guidelines increase the offense level for violators of § 2113 according to the danger their crime created. A robber who discharges a firearm has his base offense level increased by seven. U.S.S.G. § 2B3.1(b)(2)(A). If the robber displays, brandishes or possesses a firearm, this boosts his base level by five. *Id.* § 2B3.1(b)(2)(C). If the robber does the same with some other dangerous weapon, this increases the base level by three. *Id.* § 2B3.1(b)(2)(E). If the robber makes an express threat of death, it results in a 2 level increase. *Id.* § 2B3.1(b)(2)(F).

Before November 1991, the Guidelines did not make these distinctions. U.S.S.G. § 2B3.1(b)(2)(C) (1990); U.S.S.G.App. C at 186. A robber who wrapped her hand in a towel and pretended it was a gun was therefore sentenced as if she had actually "brandished" a real firearm. *United States v. Dixon,* 982 F.2d 116, 118–19, 124 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2371, 124 L.Ed.2d 276 (1993).

§ 2113(d)'s "use of a dangerous ... device" in the sense thus far suggested—that when the defendant does not actually have a dangerous weapon in his possession, he must in some manner display an apparently dangerous object during the robbery—not only draws a fairly clear line on this basis, but also does so consistently with the statute's language, the Supreme Court's decision in *McLaughlin,* ·and the decisions of other courts of appeals. On the other hand, to interpret § 2113(d) as the prosecution suggests, and at the same time maintain § 2113(a) as a separate offense, would plunge us into a morass. If a robber's words and actions may be considered use of a dangerous "device," what is the difference between a case in which the bank robber says "Give me all your money or else," a case in which the robber says "Give me all your money or I will punch your lights out," and this case? Under the prosecution's version of § 2113(d), all three robbers would have committed an "assault ... by use of a dangerous ... device." Most bank robberies are accomplished by threatening words or gestures. Those words and gestures may constitute the "force and violence, or intimidation" required under § 2113(a). To treat them as also satisfying the use-of-a-dangerous-device element in § 2113(d) would be to merge the two sections together when Congress meant them to remain apart. One might try to maintain the distinction between the provisions by reserving aggravated bank robbery for words and actions conveying the impression that the robber had the capacity to use deadly force. But the language of § 2113(d) does not easily lend itself to such a distinction. It speaks of dangerous weapons and devices, not deadly ones, and while it talks of putting lives in jeopardy, it also uses the term "assaults," which connotes placing others in "immediate apprehension of personal injury." *Ladner v. United States,* 358 U.S. at 173, 79 S.Ct. at 211.

Any lingering doubts about the meaning of § 2113(d) are laid to rest by the rule of lenity. Although after *Chapman v. United*

*States,* 500 U.S. 453, ——, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991), we had thought the canon applied only to statutes grievously ambiguous, *United States v. McDonald,* 991 F.2d 866, 870–71 (D.C.Cir.1993), later Supreme Court decisions not citing *Chapman* do not seem to demand such a high level of uncertainty. *See Ratzlaf v. United States,* —— U.S. ——, ——, 114 S.Ct. 655, 663, 126 L.Ed.2d 615 (1994); *Smith v. United States,* —— U.S. ——, ——–——, 113 S.Ct. 2050, 2059–60, 124 L.Ed.2d 138 (1993); *id.* —— U.S. at ——, 113 S.Ct. at 2063 (Scalia, J., joined by Stevens and Souter, JJ., dissenting); *United States v. R.L.C.,* —— U.S. ——, ——, 112 S.Ct. 1329, 1338, 117 L.Ed.2d 559 (1992) (plurality opinion); *id.* —— U.S. at ——–——, 112 S.Ct. at 1339–41 (Scalia, J., joined by Kennedy and Thomas, JJ., concurring in part and concurring in the judgment); *United States v. Thompson/Center Arms Co.,* —— U.S. ——, ——–——, 112 S.Ct. 2102, 2109–10, 119 L.Ed.2d 308 (1992). In this case, it is at best highly debatable that a dangerous "device" under § 2113(d) may consist merely of a robber's words and gestures, as the prosecution contends. We have given our reasons for disagreeing with the prosecution, reasons closely paralleling the Solicitor General's. To the extent our analysis is deficient, the consequence is that § 2113(d) is more ambiguous on this subject than we have supposed. Under the canon, the ambiguity must be resolved in favor of lenity and against the prosecution. Unless the criminal is in possession of a dangerous weapon capable of placing lives in jeopardy—a subject we next discuss—the criminal must, during the commission of the bank robbery, in some manner display an object reasonably perceived as capable of inflicting bodily harm.[10] Ray displayed nothing. The jury instruction misinterpreted § 2113(d), and Ray's conviction under that section must, for that reason, be reversed.

## II

Because the erroneous instruction made it irrelevant whether Ray actually had a dan-

---

**10.** State courts interpreting similar assault-with-a-dangerous-weapon statutes have reached the same conclusion. *See People v. Jolly,* 442 Mich. 458, 502 N.W.2d 177, 180–82 (1993); *Wynn v. United States,* 538 A.2d 1139, 1145 (D.C.1988);

*State v. Butler,* 89 N.J. 220, 445 A.2d 399, 402–404 (1982), *superseded by statute as stated in State v. Bill,* 194 N.J.Super. 192, 476 A.2d 813 (1984).

gerous weapon, we have thus far assumed that he did not. But suppose he had a deadly weapon in his pocket during the robberies and suppose as well that the prosecution introduced enough evidence to enable a properly instructed jury to so find. This would make a difference (Ray could be retried under § 2113(d)), only if aggravated bank robbery could be committed when a robber enters the bank in possession of a weapon he does not reveal. The Solicitor General told the Supreme Court in *McLaughlin* that "if a robber approaches a teller and demands money, without displaying a weapon, it appears that the robber would not be subject to punishment under Section 2113(d), even if in fact the robber has a concealed weapon." Brief for the United States at 18, *McLaughlin* (No. 85–5189). Here we part company with the Solicitor General.

As to the evidence, there was proof that Ray possessed a firearm each time he robbed the bank. The most telling item consisted of Ray's threat to blow the teller's head off. Loaded guns are capable of doing just that. From Ray's threat, therefore, one could reasonably infer—the teller certainly did—that Ray meant what he said and that he had a gun to back it up.[11] Ray's reaching into his pocket while uttering his threat increases the probability that the teller was right. The testimony of the get-away driver points in the other direction, but when we view what the prosecution presented in the light most favorable to it, we believe a jury reasonably could find that Ray had a firearm. *Cf. Parker v. United States*, 801 F.2d 1382, 1383–85

(D.C.Cir.1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 964, 93 L.Ed.2d 1011 (1987).

 Whether the possession of a concealed firearm during a bank robbery may lead to a violation of § 2113(d) turns, we believe, on the following statutory language: "puts in jeopardy the life of any person by the use of a dangerous weapon...." A firearm capable of blowing someone's head off is a "dangerous weapon." If a robber enters a bank with a firearm, even a concealed one, he "use[s]" it when he threatens, as a jury could find Ray did, to kill someone with it. *See Smith v. United States*, —— U.S. ——, ——, 113 S.Ct. 2050, 2056, 124 L.Ed.2d 138 (1993).[12] A bank robber who does not pull the trigger is just as guilty of violating § 2113(d) as one who does. He also "puts in jeopardy" the lives of those inside. A robber with a loaded gun tucked in his pocket places lives at risk because of the prospect that, should the need or impulse arise, he will commit murder. He is thus more dangerous, far more dangerous, than a robber who is unarmed. The Solicitor General viewed the situation solely in terms of the response of others to the robbery and argued that only when the robber displays his weapon does he heighten the danger in an otherwise dangerous situation. Brief for the United States at 19–20, *McLaughlin* (No. 85–5189). From that perspective, the Solicitor General has an excellent point. But as we have just indicated, there is another perspective. Yes, lives are put in jeopardy during a bank robbery when the robber displays what appears to be a dangerous weapon or device, thereby increasing the likelihood that others will re-

---

**11.** The inference is permissible as long as it is rational to let the jury make the connection. *County Court of Ulster County v. Allen*, 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). If it is permissible for a jury to infer that there has been a murder when the murderer confesses but no body has been found, *see Government of the Virgin Islands v. Harris*, 938 F.2d 401, 404, 411–15 & n. 12 (3d Cir.1991), then surely a jury can rationally infer that when a robber indicated he had a gun, he in fact had a gun.

**12.** The post-enactment legislative history cited by the Solicitor General in *McLaughlin* (*supra* pp. 6–7) supports this interpretation. Congress amended 18 U.S.C. § 924(c) to make the provi-

sion's sentencing enhancement for using or carrying a firearm applicable to § 2113(d) offenses. The Senate Report on the amendment, quoted by the Solicitor General, stated: "Evidence that the defendant had a gun in his pocket but did not display it, *or refer to it*, could nevertheless support a conviction for 'carrying' a firearm in relation to the crime...." S.Rep. No. 225, 98th Cong., 2d Sess. 314 n. 10 (1983) (emphasis added), U.S.Code Cong. & Admin.News 1984, pp. 3182, 3492. The clear inference, although a negative one, is that a bank robber who had a real gun concealed in his pocket during a robbery and referred to it (as we believe a jury would be entitled to find Ray did), "used" rather than simply "carried" the gun. *Cf. United States v. Beverly*, 921 F.2d 559, 563 (5th Cir.1991).

spond violently. But lives are also put in jeopardy when a robber walks into the bank with a loaded gun concealed on his person and, in effect, verbally brandishes it. He has empowered himself to turn the scene violent at will. His threat not only magnifies the chances that he will do just that if anyone gets in his way but also increases the likelihood of a violent response. We agree with the Solicitor General that the prospect of lives being lost makes a difference. But we do not agree that the prospect is heightened only when the robber displays his gun.[13] We therefore hold that if a defendant has the capacity to murder, if he possesses a firearm or some other device capable of killing, during the commission of the robbery, and threatens someone with it,[14] he has used that weapon or device to put lives in jeopardy and is therefore guilty of violating § 2113(d).[15]

### III

The judgments of conviction on the counts charging violations of § 2113(d) are reversed. The judgments of conviction on the lesser offense of § 2113(a), not challenged in this appeal, will stand. The case is remanded for a new trial on the § 2113(d) charges.

13. Dicta in *United States v. Wardy*, 777 F.2d 101, 105 (2d Cir.1985), *cert. denied*, 475 U.S. 1053, 106 S.Ct. 1280, 89 L.Ed.2d 587 (1986), quoted in the Solicitor General's *McLaughlin* brief, is hard to square with our interpretation of § 2113(d). The court there said that "a conviction under § 2113(d) would probably be unwarranted" if the robber concealed his weapon during the robbery. But in *Wardy* the robber did not conceal his firearm. He struck a guard three times with it. It is therefore uncertain how carefully the court considered the sentence just quoted, which itself contains the cautious qualifier "probably."

14. Such a robber is doing more than "merely possessing" the gun.

15. Thus, when the defendant has not displayed a dangerous weapon or an ostensibly dangerous one, our decision is that the defendant may nevertheless be convicted under § 2113(d) if he in fact had an actual firearm and used it by threatening others with it. The dissent, quoting the foregoing statement, has "no difficulty" with it "as a theoretical proposition."

The difference between our holding and the rule of law embodied in the jury instruction may

The court commends Edward C. Sussman, Esq., who was appointed by this court, for his able presentation on Ray's behalf.

*Reversed and remanded.*

WILL, Senior District Judge, concurring in part and dissenting in part:

I am in complete accord with the analysis in Part I of the majority opinion which agrees with the Supreme Court's decision in *McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986), as well as the position of the Solicitor General of the United States in *McLaughlin* and with a number of subsequent court decisions all holding that some display or brandishing of an ostensibly dangerous weapon is essential to a conviction under 18 U.S.C. § 2113(d) and that it does not apply where there was no more than a threat to use violence and no apparently dangerous device was exhibited. Accordingly, I agree that the jury instruction here was overbroad, misinterpreted § 2113(d), and the conviction must be reversed.

In reaching its conclusion, the majority assumes that Ray did not in fact possess a dangerous weapon and there is no direct evidence that he did. He exhibited no weapon and did not state that he had one but did

be illustrated as follows. Suppose a robber like Ray is arrested as he runs out of the bank and, as the ensuing search makes clear, he had no firearm concealed on his person. In other words, he was only bluffing. Even so, he could be convicted of aggravated bank robbery under the district court's instruction so long as a reasonable person in the position of the bank employees would have believed he was armed. But under our interpretation of § 2113(d) a conviction could not stand. Moreover, because the district court's instruction makes it irrelevant that the defendant did not in fact have a gun—only the tellers' reasonable perceptions that they might die or face serious injury matter—it follows that other evidence (the testimony of the get-away driver in this case, for instance) disproving possession would be of no moment. Under our view of § 2113(d), whether the defendant had a firearm is for the jury to decide in light of all the evidence, including evidence the defense presents. The issue is not what a reasonable person would perceive from what the defendant did in the bank. It is whether the evidence, including not only what occurred in the bank but also all other evidence bearing on the matter, is sufficient to show that the defendant had a firearm.

threaten to blow the teller's head off. He had no weapon when apprehended and the driver of the getaway car, although testifying for the prosecution pursuant to a plea bargain, stated that he had not seen Ray in possession of a gun. The tellers saw no gun or even the outline or contour of one. The most they observed was that Ray "moved his hands around a lot" and put one hand in his pocket and removed it with nothing in it.

It is clear, and the majority agrees, that, under the Solicitor General's statement to the Supreme Court in *McLaughlin*, and, I believe, at least inferentially, the holdings in *McLaughlin* and all the other subsequent cases, § 2113(d) requires a disclosure of some physical object which is or could reasonably be believed to be a "dangerous weapon or device." The majority acknowledges in Part I that "at any rate, the prosecution here is unable to cite even one reported case after *McLaughlin* in which a § 2113(d) conviction of a bank robber, who revealed no physical object, has been sustained merely on the basis that his words and actions were a 'device.'" Maj. op. at 1138. That statement will no longer be true if the prosecutor follows the majority's advice, retries Ray, and he is convicted.

The majority also points out that most bank robberies are accomplished by threatening words or gestures or both and to treat them as satisfying § 2113(d) would be to merge it with § 2113(a) and subsume the latter. Notwithstanding this clear, and to me necessary, distinction between the two statutory sections, the majority proceeds in Part II of its opinion to disagree with the Solicitor General, *McLaughlin* and all the courts since *McLaughlin*, and hold that, on the same evidence which all the decided cases hold and which the majority holds in Part I would not sustain a conviction under § 2113(d), a jury could reasonably believe from Ray's threats and actions that, although

he exhibited nothing anyone thought was a weapon, he possessed one and, accordingly, could convict him under § 2113(d).

To reach this conclusion, the majority must, in my opinion, contradict itself. In Part I it holds that the trial court's instruction that the § 2113(d) charge required the government to prove only "that the defendant during the commission of the bank robbery committed acts or said words that would have caused an ordinary person reasonably to expect to die or face serious injury by the defendant's use of a dangerous weapon or device" was erroneous and requires reversal of the § 2113(d) conviction. The reason, as the opinion states, is because under the decided cases, words and actions, however threatening, are insufficient to sustain a conviction under § 2113(d).

In Part II, however, the majority concludes that the same words and actions may be sufficient if the jury finds from them that the defendant possessed a dangerous weapon or device even though there is no other evidence that he did. This, to me, is legal legerdemain.

It is also inconsistent, as the majority acknowledges in Part I, with all the cases before and after *McLaughlin* holding that a § 2113(d) conviction cannot be sustained merely on the basis of words and gestures but requires exhibition of some physical object which could reasonably be believed to be a dangerous device.[1] Worst of all, it permits blurring if not erasing the clear line between § 2113(a) and § 2113(d) drawn by the Solicitor General and all the cases and which the majority approves in Part I. Holding that, while words and gestures are insufficient to constitute a dangerous device and sustain a conviction under § 2113(d) but, with no more evidence, the same words and gestures may permit a jury to conclude that the defendant possessed and used a gun or other dangerous device is gobbledygook and to all intents and

---

1. *See United States v. Perry*, 991 F.2d 304 (6th Cir.1993); *United States v. Wardy*, 777 F.2d 101 (2nd Cir.1985), *cert. denied*, 475 U.S. 1053, 106 S.Ct. 1280, 89 L.Ed.2d 587 (1986); *United States v. Cobb*, 558 F.2d 486 (8th Cir.1977); *United States v. Spedalieri*, 910 F.2d 707 (10th Cir.1990); *United States v. Medved*, 905 F.2d 935 (6th Cir. 1990), *cert. denied*, 498 U.S. 1101, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991); *United States v. Cannon*, 903 F.2d 849 (1st Cir.), *cert. denied*, 498 U.S. 1014, 111 S.Ct. 584, 112 L.Ed.2d 589 (1990); *United States v. Martinez–Jimenez*, 864 F.2d 664 (9th Cir.), *cert. denied*, 489 U.S. 1099, 109 S.Ct. 1576, 103 L.Ed.2d 942 (1989); *United States v. Crouthers*, 669 F.2d 635 (10th Cir.1982).

purposes eliminates the line drawn by the Solicitor General and the numerous cases.

The majority seeks to reconcile the holding in Part I that the instruction was erroneous and its conclusion in Part II by suggesting that the erroneous instruction depended on the teller's perception while in Part II the determination is to be made by the jury. But the erroneous instruction referred not to the teller but to whether the jury found that the defendant "committed acts or said words that would have caused *an ordinary person* reasonably to expect to die or face serious injury by defendant's *use* of a dangerous weapon or device." (emphasis supplied). I submit that a jury should not find that a defendant used a gun if an ordinary person could not reasonably do so. And the cases, as well as the Solicitor General's analysis, all directly or inferentially hold that, unless a gun or other apparently dangerous device is exhibited, neither an ordinary person nor a jury can reasonably find that it was used as § 2113(d) requires.

The Sixth Circuit in *United States v. Perry*, 991 F.2d 304 (6th Cir.1993), reached the same conclusion:

> We emphasize that our conclusion that "use of dangerous weapon" does not include concealed possession of a toy gun comports with the language of the statute. Section 2113(d) enhances the sentence for anyone who, in committing or attempting to commit bank robbery "puts in jeopardy the life of any person by the use of a dangerous weapon...." *Thus "use" plainly connotes something more than possession.*

*Id.* at 309 (emphasis supplied). The majority here not only holds that concealed possession is sufficient to constitute "use" but that possession of a gun or other dangerous device may be inferred by a jury from merely words or gestures. In *Perry* it was undisputed that the defendant possessed a concealed toy gun.

In explaining its reasoning the Sixth Circuit went on to say in *Perry:*

> Congress could have provided for enhanced penalties whenever a gun was "possessed." Congress did not. Congress could have provided for enhanced statutory penalties whenever the perpetrator of a

§ 2113(a) or (b) offense caused his victim to fear that the victim's life might be endangered because of a dangerous weapon. Congress did not. Neither the plain language of the statute nor case law supports an extension of "use of a dangerous weapon" to include the concealed possession of a nongenuine gun.

*Id.* at 309–10. I agree with that analysis. Concealed possession alone is not "use" under § 2113(d). And if undisputed actual concealed possession is not "use," possession inferred from words and gestures cannot possibly be. Therefore, I see no reason why we should extend § 2113(d) to mere possession, when Congress did not.

If I understand the majority opinion, the proper instruction to a jury considering a § 2113(d) charge would read something as follows:

> The law is clear that you may not convict the defendant under § 2113(d) merely because he said he had a gun or other dangerous device and gestured or acted like he did but never displayed or exhibited any object which looked like or could reasonably have been believed to be a gun or other dangerous object. However, if you are satisfied from his words, actions or gestures that he did have a hidden gun or other dangerous object even though he did not display it, then you may convict him under § 2113(d).

I have the highest regard for the ability of jurors to comprehend the evidence and a court's instructions as to the law. The law is frequently more of a challenge than the evidence. I submit that to tell a jury they may not convict on mere words and actions and then tell them that they may, is almost certain to confuse them.

Nor do I find the language of § 2113(a) and § 2113(d) to justify, much less compel, the majority's conclusion in Part II. I agree with the Solicitor General's statement to the Supreme Court in *McLaughlin* and the various cases, including *Perry,* that § 2113(d) does not cover a situation in which a robber approaches a teller and demands money but does not display a weapon, other dangerous device or what could reasonably be believed

to be a dangerous device "even if in fact the robber has a concealed weapon." Brief for the United States at p. 18. *McLaughlin* (No. 85–5189).

The language of § 2113(d) is explicit that it applies only if the defendant "assaults any person, or puts in jeopardy the life of any person by the *use* of a dangerous weapon or device...." (emphasis supplied). I do not understand how one can be found to have assaulted or put in jeopardy the life of a person by the *use* of a weapon which he did not possess or one which was concealed and never exhibited at all even if the jury thinks he possessed one.

The majority concludes that "when the defendant has not displayed a dangerous weapon or an ostensibly dangerous one, our decision is that the defendant may nevertheless be convicted under § 2113(d) if he in fact had an actual firearm and used it by threatening others with it." Maj. op. at 1142 n. 15. I have no difficulty with that statement as a theoretical proposition, but I do with its application. I do not see how a jury can determine, beyond a reasonable doubt, absent any evidence other than statements and gestures, that "he in fact had an actual firearm and used it by threatening others with it." This approves precisely the kind of speculating which jurors should not do and courts should not permit much less encourage them to do. Yet, since jurors are not omniscient or endowed with divine knowledge, that is exactly what the majority would authorize them to do. The result, of course, is to enhance and lengthen the defendant's sentence whether or not he did in fact possess and use a firearm or other dangerous device. Like the Solicitor General and all the other courts, I simply do not believe you can be found to have "used" something which is hidden or which you may not even have, notwithstanding the jury's believing you did possess it.

I also agree with the majority that, from the perspective of the teller, words and gestures may be as forceful or intimidating as a gun. Section 2113(a) clearly covers both. I also agree with the majority that words and gestures may stimulate violent response and put lives in jeopardy. And finally, I agree

that if a person possesses a firearm, he has the capacity to inflict harm. I do not agree, however, that a bank robber who says he has a gun or other dangerous device and either has or has not but, in any event, does not "use" it by displaying it in some fashion, can or should be convicted of using it under § 2113(d) even though the jury may be persuaded he possessed it. On the other hand, § 2113(a) is clearly applicable.

The line drawn by the Solicitor General and all the courts which have considered the distinction between § 2113(a) and § 2113(d) is a good one and should not be blurred or, worse, eliminated. I would simply reverse the conviction under § 2113(d) and remand for resentencing accordingly.