UNITED STATES of America, Appellee,

v.

Bernard S. LEVI, Appellant.

No. 93–3063.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 29, 1994.

Decided Jan. 24, 1995.

Sandra G. Roland, Asst. Federal Public Defender, Washington, DC, argued the cause for appellant. With her on the briefs was A.J. Kramer, Federal Public Defender, Washington, DC.

James A. Meade, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the brief were Eric H. Holder,

Jr., U.S. Atty., John R. Fisher, Roy W. McLeese, III, and Halsey B. Frank, Asst. U.S. Attys., Washington, DC.

Before EDWARDS, Chief Judge, GINSBURG and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Bernard Levi was convicted on two counts of bank robbery and on seven counts of aggravated bank robbery, pursuant to 18 U.S.C. §§ 2113(a) and (d) respectively. Levi challenges his convictions and his sentence on a variety of grounds, none of which has merit. Accordingly, we affirm the judgment of the district court in all respects.

## I. BACKGROUND

The nine bank robberies at issue here all occurred during the seven weeks between November 22, 1991 and January 9, 1992. All nine robberies took place in the District of Columbia and eight of the nine involved banks within a several block radius of each other. Indeed, four of the robberies involved the same branch bank, and two others occurred at another nearby. The perpetrator of each robbery handed the teller a note demanding large bills and in most instances stating that he had a gun; on several occasions the perpetrator also informed the teller orally, or made gestures suggesting, that he had a gun. Eyewitnesses to the robberies offered similar descriptions of the perpetrator.

Bank employees watched the perpetrator of the last robbery get into a car and they took note of the license plate number. The police then arrested Mr. Levi, to whom the vehicle was registered. Upon questioning he admitted to having committed six of the robberies. Although he did not remember committing three other robberies, he stated that if the perpetrator used a note demanding $100, $50, and $20 bills and stated that he had a gun, then that probably was him.

At trial several government witnesses identified Mr. Levi as the perpetrator. Moreover, the prosecution introduced into evidence surveillance camera photographs of six of the robberies, including one upon which Mr. Levi had written "I was involved" and signed his name.

## II. ANALYSIS

Through counsel appointed by the court Levi seeks a new trial on the ground that the district court abused its discretion when it refused to sever the charges against him for separate trials. Alternatively, counsel asks this court to vacate Levi's convictions for aggravated bank robbery, arguing that the district court erred in denying Levi's motion for judgment of acquittal on those charges and in instructing the jury on the elements of aggravated bank robbery. Finally, in a separate *pro se* brief, Levi challenges the length of his sentence, arguing that the court improperly considered his conviction under the Federal Youth Corrections Act (FYCA).

### A. *Denial of Severance*

The decision of a district court to deny a defendant's motion to sever offenses "may generally be reversed 'only upon a finding of clear prejudice and abuse of discretion.'" *United States v. Daniels*, 770 F.2d 1111, 1115 (D.C.Cir.1985) (quoting *United States v. Lewis*, 626 F.2d 940, 945 (D.C.Cir.1980)). A finding of prejudice is logically precluded if, had the counts been tried separately, the evidence concerning each count would have been admissible in the trial on each other count. *See Bradley v. United States*, 433 F.2d 1113, 1118 (D.C.Cir. 1969); *United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir.1987). Here the *modus operandi* in all of the robberies was strikingly similar—the perpetrator used similar notes, made similar statements and gestures, wore similar clothing, and robbed banks (some more than once) in the same general area of the city. Therefore, evidence concerning all of the robberies would surely have been admissible in the trial for each of the other robberies. *See* Fed.R.Evid. 404(b) (identity exception to general rule against admission of evidence concerning other crimes); *see also Drew v. United States*, 331 F.2d 85, 90 (D.C.Cir.1964). Hence, there was no prejudice, and the district court did

not abuse its discretion in denying Levi's motion for severance.

### B. *Adequacy of the Instruction*

■ One is guilty of aggravated bank robbery if in the course of robbing a bank one "assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device...." 18 U.S.C. § 2113(d). A bank robber who displays an object that is reasonably perceived to be a dangerous weapon or device violates § 2113(d) regardless whether he actually has a dangerous weapon or device. *United States v. Ray*, 21 F.3d 1134, 1140 (D.C.Cir. 1994). A bank robber who does not display an ostensibly dangerous weapon or device, however, can be found guilty of aggravated bank robbery only if the evidence establishes both that he had a concealed weapon and that he used it in the course of the robbery by threatening someone with it (whether by word or by deed). *Id.* at 1140–42 & n. 15.

■ In *Ray* we reversed the convictions for aggravated bank robbery because the instruction allowed the jury to convict the defendant if a person at the scene of the crime reasonably believed, based upon the defendant's threats and actions, that he might die or face serious injury—i.e., even if the defendant neither displayed an ostensibly dangerous weapon nor actually had a concealed weapon. But § 2113(d) penalizes "the use of a dangerous weapon," not merely threatening or putting someone in fear. Therefore, it is an element of the offense that the defendant who does not brandish an ostensibly dangerous weapon actually has a concealed weapon. *Id.* at 1136, 1140–42 & n. 15.

■ In this case the district court, having instructed the jury in the terms of the statute itself, went on to explain in its own words:

> It is not necessary that the weapon have actually been used against any person, or that any person was killed or injured. It is sufficient if any person in the bank at the time was menaced or threatened with the weapon to the extent that he or she

reasonably believed that it might be immediately used against him or her.

Relying upon *Ray*, Levi claims that this instruction constitutes reversible error because it too allowed the jury to convict him based upon nothing more than a victim's reasonable belief that Levi might use a dangerous weapon against him or her, again, without regard to whether Levi actually had a dangerous weapon. Levi's counsel, however, failed to offer a timely objection to the instruction. As a result, we may not overturn Levi's convictions unless the instruction constitutes plain error, Fed.R.Crim.P. 52(b), i.e., unless the instruction was clearly erroneous. *United States v. Olano*, —— U.S. ——, ——, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993).

This instruction was not clearly erroneous. Unlike the charge in *Ray*, the instruction in this case clearly if implicitly suggested that for the defendant to have used a concealed weapon he must have had a concealed weapon. Indeed, the instruction twice referred to "the weapon" and then referred back to "it." In no way did the court suggest that the jury could convict upon the basis of a victim's reasonable fear that Levi might kill or seriously injure someone with a dangerous weapon; rather it required the jury to find that Levi had threatened such harm and had an actual weapon with which to make good his threat. Perhaps the instruction was not perfect because the court did not state explicitly that "the defendant must have had a weapon"; but it did imply as much and we see no reason to doubt that the jury understood that.

■ Moreover, in their closing arguments, counsel for both sides repeatedly focused the jury's attention upon the question whether the defendant actually had a gun during the commission of the robberies. *See United States v. Chan Chun–Yin*, 958 F.2d 440, 444 (D.C.Cir.1992) (holding that counsel's argument to jury shall be considered in deciding whether instruction constitutes plain error). Thus, the only message to the jury, thrice sent and we must presume thrice received, was that in order for Levi to be guilty of aggravated bank robbery, he must have had a weapon with him during the bank robbery. Thus, Levi has not come close to

demonstrating, as he must in order to make out a plain error, that the instruction was "clearly erroneous," that it affected his "substantial rights," and that the error "affected the outcome of the District Court proceedings." *Olano,* —— U.S. at ——–——, 113 S.Ct. at 1776–78.

## C. *Sufficiency of the Evidence*

Levi claims that, in light of the evidence adduced by the Government, the district court erred in denying his motions for judgment of acquittal on the aggravated bank robbery charges. We will reverse the jury's verdict for want of sufficient evidence only if we can say that, "viewing the evidence in the light most favorable to the government, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Teffera,* 985 F.2d 1082, 1085 (D.C.Cir. 1993).

So viewed, the evidence in this case is that the perpetrator of each of the seven robberies for which Levi was convicted of aggravated bank robbery did in fact use a gun to endanger the life of another. Foremost, in five of the robberies he stated either orally or in writing (or both) that he had a gun. As suggested by *Ray,* that statement by itself is sufficient evidence to convict unless contradicted by overwhelming evidence. *See Ray,* 21 F.3d at 1141. (For example, the perpetrator was apprehended before leaving the bank and no weapon was found. *See id.* at 1142 n. 15.) Here, there is no evidence contra; there is only more inculpatory evidence. Thus, in the course of at least three of the five robberies in which he claimed to be armed, the perpetrator also made gestures that appeared to support his claim. During the sixth robbery he kept one of his hands in his pocket and told a teller that he would "blow [his] head off." And during the seventh robbery he passed the teller a note (which the teller did not read) and lifted his coat, revealing to the teller a brown object that the teller understood to be the handle of a gun.

In *Ray* we made it clear that a perpetrator who "verbally brandishes" a concealed gun during the commission of a bank robbery has "used that weapon or device to put lives in jeopardy and is therefore guilty of violating § 2113(d)." 21 F.3d at 1142. It follows that Levi may be convicted of aggravated bank robbery for each of the six robberies in which he either stated that he had a gun or threatened to blow the teller's head off. Both statements are sufficient evidence for the jury reasonably to conclude that the robber indeed had a gun (and of course endangered someone with it). Likewise, with regard to the seventh robbery, a jury could reasonably conclude that a robber who showed the teller what appeared to be the handle of a gun while passing a note to the teller in fact had a gun and was threatening to use it.

## D. *Reliance Upon the FYCA Conviction in Sentencing*

Levi claims that the district court improperly lengthened his sentence on the basis of a FYCA conviction that had been "set aside." As a threshold matter, we note that Levi has not established that his conviction was actually set aside. Assuming it was, however, under the law of this Circuit the conviction was still properly included in determining Levi's sentence. See *United States v. McDonald,* 991 F.2d 866, 872 (D.C.Cir.1993) (holding that a conviction "set aside" pursuant to the D.C. Youth Rehabilitation Act, which is "substantially the same as the [FYCA]," has not been "expunged" and therefore is not to be disregarded under the Sentencing Guidelines); *see also Barnes v. United States,* 529 A.2d 284, 286–89 (D.C. 1987) (holding that a FYCA conviction that has been "set aside" is nevertheless properly considered when determining the length of a sentence under the Sentencing Guidelines).

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court in all respects.

*So Ordered.*