**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Pedro V. SPEDALIERI,**
**Defendant–Appellant.**

No. 89–2181.

United States Court of Appeals,
Tenth Circuit.

Aug. 7, 1990.

**708**

---

William D. Fry, Asst. Federal Defender, Las Cruces, N.M., for defendant-appellant.

Robert J. Gorence, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before LOGAN, BALDOCK and BRORBY, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant-appellant, Pedro V. Spedalieri, was convicted of armed robbery in violation of 18 U.S.C. § 2113(a) and (d), and sentenced to fifty-seven months imprisonment. On appeal, Spedalieri argues that the district court erred in 1) denying his motion for a judgment of acquittal on armed robbery (§ 2113(d)) because an actual bomb was not involved, 2) misapprehending its authority to depart downward from the Sentencing Guidelines, and 3) not granting a two-level downward adjustment for acceptance of responsibility. We reject Spedalieri's contentions and affirm.

## I.

Viewing the evidence and its inferences in the light most favorable to the government, we summarize the facts. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). On April 8, 1988, a red and white Chevrolet Impala approached a drive-up window at the Bank of the Rio Grande in Las Cruces, New Mexico. The driver, later identified as the defendant, passed two handwritten notes to the teller, Irma Jo Schunior. She testified:

> Okay, the first note I read was very— it was a small one, and it said, this is a robbery and I want all your money. The second note was a little larger, and it also said that this is a robbery and I want all your money, and that I had ten minutes to open the side-door [of the drive-up facility] so that he can get in to take the money and that he had a bomb.

> .   .   .   .   .

> Well, after I read the notes, I was terrified. I couldn't move for a minute or two.

Rec. vol. II at 61. Sent along with the two notes was Spedalieri's New Mexico driver's license. Schunior then noticed a device on the front seat of the Impala. Spedalieri picked the device up and waved it at her. She described the device as follows:

> Okay, it was a brown tube about ten to twelve inches tall. It was brown with— somewhat a grey lid on top. It all looked like electrical tape to me.

> .   .   .   .   .

> It was just a big round tube, brown, all the way. It was all brown except for the top.

*Id.* at 65. Schunior believed the object to be a real bomb and felt threatened by it. *Id.* at 71. Schunior then pulled the "bait money" in her money box which activates the silent alarm. She placed some cash in a canvas bag and sent the bag to Spedalieri via the mechanical bank drawer. Upon receipt, Spedalieri asked for his notes back. Schunior complied, but kept Spedalieri's driver's license.

Two weeks later, Spedalieri crossed the border from Mexico into the United States. Because a warrant had been issued for his arrest, the license number of Spedalieri's vehicle was entered in the NCIC (National Crime Information Center) database. When Spedalieri entered the port of entry, his car license activated a Customs alarm. Upon hearing the alarm, Spedalieri threw his arms into the air and was arrested.

Spedalieri had changed the color of his vehicle and had bleached his hair. His pockets contained numerous dog-racing tickets; however, none of the $19,001 taken in the robbery was recovered.

Spedalieri has a history of mental illness, but was found competent to stand trial after treatment at Springfield, Missouri. He functions just above the level of a retarded person, with an I.Q. of 75. Rec. vol. II at 165–66.

At the close of the government's evidence, Spedalieri moved for a judgment of acquittal. *See* Fed.R.Crim.P. 29(a). Spedalieri conceded the sufficiency of the evidence for bank robbery, § 2113(a), but argued that the evidence was insufficient to support *armed* bank robbery, § 2113(d).[1] Rec. vol. II at 122–23. Relying upon *United States v. Crouthers*, 669 F.2d 635 (10th Cir.1982), the district court denied the motion.

After conviction, but prior to sentencing, Spedalieri filed objections to the presentence report. *See* Fed.R.Crim.P. 32(c)(3)(D). Spedalieri objected to the failure of the probation office to recommend the two-level downward adjustment for acceptance of responsibility and to set out factors which would warrant a downward departure from the Guidelines because Spedalieri suffered from a diagnosable mental illness. Rec. vol. I, doc. 37 at 2.

## II.

Spedalieri first argues that the district court erred in denying his judgment of

acquittal on armed robbery (§ 2113(d)) because the government did not prove that the device used in perpetrating the robbery was a dangerous weapon. According to defendant, "Spedalieri's conviction must fail because the evidence is insufficient to sustain a finding that the 'device' he waved at Schunior was in fact capable of being readily operated or wielded to inflict serious bodily injury or injury upon another person." Appellant's Brief at 7. Spedalieri argues in favor of a test which would require the government to prove that "the device was objectively capable of putting Schunior's life in danger." *Id.* at 9.

The district judge was bound to and did indeed follow Tenth Circuit precedent,[2] which is to the contrary. We have held that a fake bomb, as a matter of law, may constitute a dangerous weapon, regardless of its actual capabilities, when a victim confronted with it is placed in reasonable expectation of danger. *United States v. Marx*, 485 F.2d 1179, 1185 (10th Cir.1973), *cert. denied*, 416 U.S. 986, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974); *accord United States v. Beasley*, 438 F.2d 1279, 1282 (6th Cir.), *cert. denied*, 404 U.S. 866, 92 S.Ct. 124, 30 L.Ed.2d 110 (1971). The same is true of an unloaded gun used in the commission of a bank robbery. *McLaughlin v. United States*, 476 U.S. 16, 17, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986); *Crouthers*, 669 F.2d at 639.

In *Crouthers*, 669 F.2d at 639, we reaffirmed our adoption of the reasonable

1. 18 U.S.C. § 2113 provides:
   **Bank robbery and incidental crimes**
   (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association;

   .     .     .     .     .

   Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both

   (d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person

by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

2. A district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits. *See Zuniga v. United Can. Co.*, 812 F.2d 443, 450 (9th Cir.1987); *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867 (3rd Cir.1984) (just as one panel of the court of appeals is bound by earlier panel decisions, *a fortiori*, the district court is bound by *this* circuit's decisions); *Hasbrouck v. Texaco*, 663 F.2d 930, 933 (9th Cir.1981) (district courts "are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be"), *cert. denied*, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982).

person standard concerning the elements of armed robbery under § 2113(d). To sustain a conviction on § 2113(d), there must be proof beyond a reasonable doubt that the defendant:

> "... created an apparently dangerous situation, (b) intended to intimidate his victim to a degree greater than the mere use of language, (c) which does, in fact, place his victim in reasonable expectation of death or serious bodily injury."

*Crouthers*, 669 F.2d at 639 (quoting *Beasley*, 438 F.2d at 1282). In adopting the *Beasley* reasonable person standard, we rejected the objective test of *Bradley v. United States*, 447 F.2d 264, 274–75 (8th Cir.1971), *vacated due to abatement*, 404 U.S. 567, 92 S.Ct. 746, 30 L.Ed.2d 722 (1972), which would require that the instrumentality used by a bank robber be objectively capable of causing actual physical harm. *Crouthers*, 669 F.2d at 639; *see also United States v. Shannahan*, 605 F.2d 539, 542 (10th Cir.1979) (section 2113(d) does not require proof that the dangerous weapon or device "be actually capable of putting the life of a person in jeopardy").

Spedalieri urges that we reevaluate our adoption of the reasonable person standard and decide this case on the basis of an objective test like that in *Bradley*. Numerous problems exist with this suggestion. We are persuaded that the Supreme Court implicitly has rejected such a test, at least in the circumstances of an unloaded gun used in the commission of a bank robbery. *McLaughlin*, 476 U.S. at 17–18, 106 S.Ct. at 1678–79 (listing three reasons why an unloaded gun is a dangerous weapon). "[T]he display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue." *Id.* Moreover, "[i]t would be unreasonable to expect the victim of a crime, ... to risk [her] life in order to positively ensure that [her] assailant did

indeed have a [bomb] and that [bomb] was [able to be detonated]." *See Crouthers*, 669 F.2d at 639. The objective test is not consistent with the dangerous response which may be evoked by armed robbery, whether the instrumentality is functional or not.[3] *McLaughlin*, 476 U.S. at 17–18, 106 S.Ct. at 1678–79.

### III.

Spedalieri next contends that the district court erred by not granting a downward departure in sentence. Spedalieri asserts that the trial judge refused to exercise his discretion to consider the downward departure "because the jury returned a verdict of armed robbery, and, thus had determined that Spedalieri's defense of insanity was untenable." Appellant's Brief at 10. We think the record tells a different story.

Spedalieri's first obstacle is that the discretionary failure to depart downward from the Sentencing Guidelines is not subject to appellate review under 18 U.S.C. § 3742. *United States v. Richardson*, 901 F.2d 867, 870 (10th Cir.1990); *United States v. Davis*, 900 F.2d 1524, 1529–30 (10th Cir.1990). Here, however, Spedalieri argues that the district court never exercised its discretion because the jury had returned a verdict rejecting Spedalieri's insanity defense. According to Spedalieri, the district court not only felt bound by the jury's verdict rejecting the insanity defense, but also refused to consider any evidence indicating diminished capacity, though short of insanity. We plainly have jurisdiction under 18 U.S.C. § 3742(e)(2) to review a district court's refusal to exercise discretion or its decision that it lacks discretion as a matter of law to depart downward. *Davis*, 900 F.2d at 1530 n. 7.

A trial court's discretionary power to impose a sentence not within the range established by the guidelines is derived from 18 U.S.C. § 3553(b).[4] Departure is permissi-

---

**3.** Even if we were inclined toward Spedalieri's position, which we are not, a panel cannot overrule circuit precedent. *United States v. Nazzaro*, 889 F.2d 1158, 1161 (1st Cir.1989) ("As a panel, we are bound to adhere to prior circuit precedent."); *United States v. Salas*, 879 F.2d 530, 537

(9th Cir.) ("A three-judge panel of this court cannot disregard or overrule a prior decision of this court."), *cert. denied*, — U.S. —, 110 S.Ct. 507, 107 L.Ed.2d 509 (1989).

**4.** 18 U.S.C. § 3553(b) provides:

ble only when the Sentencing Commission did not adequately consider aggravating or mitigating circumstances in formulating the Guidelines. *Id.* Section 5H1.3, policy statement [hereinafter p.s.], provides that "[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines, except as provided in the general provision in Chapter 5." United States Sentencing Commission, *Guidelines Manual*, § 5H1.3, p.s. (Nov. 1989) (hereinafter U.S.S.G.).

██ Section 5K2 (§ 5K2.0 to § 5K2.15, U.S.S.G.) "seeks to aid the court by identifying some of the factors that the Commission has not been able to fully take into account in formulating precise guidelines." U.S.S.G. § 5K2.0, p.s. Section 5K2.13 speaks to departures based upon diminished capacity:

> **Diminished Capacity (Policy Statement)**
>
> If the defendant committed a *non-violent* offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence *may* be warranted to reflect the extent to which the reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

*Id.* (emphasis supplied). We have reviewed the transcript of sentencing and are convinced that the district judge specifically expressed his agreement with the jury's implicit finding that Spedalieri committed a violent act. Then, relying on § 5K2.13 of the Guidelines, *see* rec. vol. II at 282, the district judge exercised his discretion not to depart downward because of the potentially violent nature of bank robbery facilitated by a bomb, fake or not.

The district judge was not constrained by the jury's rejection of the insanity defense and could consider the mental capacity of Spedalieri. However, the judge also could consider "the need for incarceration to protect the public." U.S.S.G. § 5K2.13, p.s. Although the district court placed greater weight on this second factor, this decision process does not constitute a failure to exercise discretion.

This case is readily distinguishable from *United States v. Cheape*, 889 F.2d 477 (3rd Cir.1989), a bank robbery case relied upon by Spedalieri. In *Cheape*, the district court on three separate occasions indicated its desire to depart downward based upon coercion as a mitigating factor. *Id.* at 479. The court did not do so, however, holding that it was constrained by the jury's conviction of the defendant and its implicit rejection of the defendant's coercion and duress defense. *Id.* The Third Circuit held that "the [district] court was legally incorrect in ruling that the jury's verdict with regard to coercion as a defense precluded the court from considering coercion as a mitigating factor." *Id.* at 480. Conversely, in this case the district court expressed no such indication to depart downward after considering the guideline sections which provide some guidance on departure when diminished capacity is at issue. It would be anomalous, indeed, for this panel to ignore the district court's attempt to comply with the spirit of guideline sentencing by looking to the guidelines for assistance, even in the area of downward departure. In the

**Application of guidelines in imposing a sentence.** The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)4 unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

context of reviewing the reasonableness of upward departures, we have noted: "The district court does have discretion in this area, of course, and need only give a reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure."[5] *United States v. Harris*, 907 F.2d 121, 124 (10th Cir.1990). Having determined that the district court did exercise its discretion leaving us "a reasonable methodology hitched to the Sentencing Guidelines," we are without jurisdiction to review the decision denying downward departure. *See Richardson*, 901 F.2d at 870; *Davis*, 900 F.2d at 1529–30.

## IV.

Spedalieri also asserts that the district court erred in not granting him the two-level downward adjustment for acceptance of responsibility. U.S.S.G. § 3E1.1.[6] Spedalieri makes the novel argument that "while he had denied having committed the offense to the probation officer who prepared the [presentence] report, he had, in effect admitted his conduct by presenting the affirmative defense of insanity at trial." Appellant's Brief at 15; *see also* rec. vol. I, doc. 37 at 2 ("The defendant argued at trial that he committed the offense but that he was insane at the time of the commission.").

 We review the "acceptance of responsibility" determination as a question of fact under the "clearly erroneous" standard. 18 U.S.C. § 3742(e); *United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989). As such, the trial court's determination of whether a defendant has accepted responsibility is subject to "great deference on review and should not be disturbed unless it is without foundation." *Id.; see also* U.S.S.G. § 3E1.1, comment. (n.5).

 Whether a defendant should be granted a two-level adjustment for acceptance of responsibility depends upon whether the defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). The burden of proof is on the defendant and the quantum of proof is a preponderance of evidence. *United States v. Wach*, 907 F.2d 1038, 1040 (10th Cir.1990); *United States v. Rogers*, 899 F.2d 917, 924 (10th Cir.1990), *petition for cert. filed*, No. 89–7763 (Jun. 15, 1990).

 The difficulty with Spedalieri's argument is that he equates the admission of the offense, pursuant to his insanity defense, with the acceptance of responsibility and, of course, the two are not the same. Factual admissions implicit in some affirmative defenses, *see* Black's Law Dictionary 55 (5th ed. 1979), are not alone indicative of the contrition necessary under § 3E1.1 for acceptance of responsibility. Here, Spedalieri did not acknowledge responsibility, let alone commission of the offense, to the probation officer. Rec. supp. vol. I at 4. In these circumstances, Spedalieri completely failed to meet his burden of proof; consequently, the district court's denial of the adjustment cannot be clearly erroneous.

AFFIRMED.

---

5. The three-part test for evaluating upward departures from the Sentencing Guidelines contained in *United States v. White*, 893 F.2d 276, 277–279 (10th Cir.1990), was adopted from the First Circuit's decision in *United States v. Diaz–Villafane*, 874 F.2d 43, 49–50 (1st Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). The First and Eighth Circuits have now applied the same three-part test to review of downward departures made by district courts. *United States v. Crumb*, 902 F.2d 1337, 1339 (8th Cir.1990); *United States v. Williams*, 891 F.2d 962, 964 (1st Cir.1989).

6. U.S.S.G. § 3E1.1 provides:

*Acceptance of Responsibility*
(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.
(b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.
(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.