**Kimberly HENDERSON, Plaintiff,**

v.

**MONTGOMERY COUNTY, KANSAS, BOARD OF COUNTY COMMISSIONERS; Jack F. Daniels, in his individual capacity, Defendants.**

Case No. 01–2363–JWL.

United States District Court,
D. Kansas.

July 19, 2002.

Candis L. Young, Kansas City, MO, for plaintiff.

David R. Cooper Fisher, Patterson, Sayler & Smith, Topeka, KS, for defendant.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

This suit arises out of plaintiff's employment as a dispatcher in the sheriff's office of Montgomery County, Kansas. In her complaint, plaintiff sets forth claims of race and sex discrimination and harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1983 as well as a state law claim for breach of an implied contract. This matter is presently before the court on defendants' motion for summary judgment (doc. # 34). As set forth in more detail below, the motion is granted in part and denied in part.[1]

### I. Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff, an African–American female, was hired by the Montgomery County Sheriff's Department in December 1997 as a part-time dispatcher. In addition to working as a part-time dispatcher, plaintiff was also assigned duties as a civil process clerk. In March 1999, plaintiff accepted a full-time dispatcher position on the night shift. At that time, her duties as a civil process clerk ended. After plaintiff worked for six months as a full-time dispatcher, the County terminated plaintiff's employment for performance-related reasons. Plaintiff's last day of employment was September 15, 1999.

---

1. Defendants' motion is moot with respect to plaintiff's claims against the individual county commissioners as plaintiff expressly abandoned those claims after the filing of defendants' motion. *See* Pretrial Order p. 2 n. 1. Thus, the court does not address those arguments aimed specifically at plaintiff's claims against the individual county commissioners.

During the course of her employment, the sheriff of Montgomery County was defendant Jack Daniels. According to plaintiff, Sheriff Daniels sexually and racially harassed plaintiff throughout the course of her employment with the County. This harassment, according to plaintiff, consisted of both inappropriate touchings and inappropriate comments. The court begins with plaintiff's allegations concerning Sheriff Daniels' inappropriate physical contact with plaintiff. According to plaintiff, on one occasion prior to plaintiff's transfer to the night shift, Sheriff Daniels flipped a phone cord against plaintiff's breasts several times until plaintiff grabbed the phone cord and told him to stop. Plaintiff further claims that on one occasion Sheriff Daniels placed his hand on plaintiff's buttocks. Plaintiff turned around and yelled, "Don't touch my butt." This incident occurred sometime in June 1999. Plaintiff also testified that Sheriff Daniels had a practice of standing in a doorway and forcing female employees, including plaintiff, to brush by him in order to pass through the doorway. Plaintiff testified in her deposition that this "practice" occurred numerous times, but that, for plaintiff at least, the practice stopped once she began working the night shift (primarily because Sheriff Daniels was not in the office as often during the night shift). Finally, in her affidavit,[2] plaintiff averred that there were "many times" when Sheriff Daniels would follow her to the copy machine and brush his hand across her buttocks as he walked by or otherwise brush up against her even though there was adequate room to pass without making physical contact.

With respect to Sheriff Daniels' inappropriate remarks, plaintiff testified in her deposition that Sheriff Daniels, prior to the time plaintiff transferred to the night shift, made offensive comments on a daily basis. Plaintiff testified, for example, that Sheriff Daniels always made "stupid women" remarks and that he "made sure everyone knew he thought women were idiots." She further testified that Sheriff Daniels often told dirty jokes about women, though she could not remember any specific jokes told by Sheriff Daniels. On one occasion, Sheriff Daniels allegedly told plaintiff that she should apply for a job at a local strip club because she "had more to offer" than the dancers there. By affidavit, plaintiff further contends that Sheriff Daniels, on multiple occasions, stated that he was "allergic to women" and, on a daily basis, made derogatory comments about women and minorities. Plaintiff further avers that Sheriff Daniels accused her of having an affair and that he "scrutinized" plaintiff's personal life, including commenting on who plaintiff could or could not date. Plaintiff also recounts an incident in which Sheriff Daniels commented that he had been told that a man plaintiff had dated complained that she had given him "crabs" by sleeping on his bed. According to plaintiff, Sheriff Daniels discussed this "rumor" with her and others in the office for some time. Plaintiff further avers that Sheriff Daniels

---

**2.** Defendants urge the court to strike most if not all of plaintiff's affidavit in part because, according to defendants, the statements in plaintiff's affidavit contradict plaintiff's deposition testimony. The court has carefully reviewed plaintiff's affidavit and her deposition testimony and concludes that only a few statements in her affidavit directly contradict her deposition testimony. The court will not consider those statements in its analysis of defendants' motion. *See Bohn v. Park City Group,* *Inc.,* 94 F.3d 1457, 1463 (10th Cir.1996) (When an affidavit contradicts a plaintiff's deposition testimony, "the affidavit should not be considered."). Many of the statements made by plaintiff in her deposition, however, do not contradict her deposition testimony and simply supplement her deposition testimony or cover areas about which she was not specifically asked during her deposition. The court has considered these statements in its analysis of defendants' motion.

brought cans of lice spray to the office, set the cans on the desks of various employees in the office and began spraying the seats on which plaintiff had been sitting, stating that he wanted to ride the area of crabs.[3]

With respect to her claim of racial harassment, plaintiff testified that Sheriff Daniels made two specific comments to her prior to the time she transferred to the night shift. On one occasion, when the Sheriff's Department was working on a drug bust, Sheriff Daniels allegedly suggested to plaintiff that she should "go down and buy some drugs" because she was black and, thus, would "blend in better." On another occasion, plaintiff had braided her hair and Sheriff Daniels allegedly commented that she "looked like one of them-there Negroes." Plaintiff testified that Sheriff Daniels made other derogatory comments about minorities, including African–Americans, but that such comments were made "in passing" and she could not remember any other specific comments.

In March 1999, around the time of her transfer to the night shift, plaintiff complained to her supervisor, Nancy Manire, about Sheriff Daniels' conduct. In essence, plaintiff told Ms. Manire that she was uncomfortable with and offended by Sheriff Daniels' conduct and comments. Despite the fact that plaintiff did not want Ms. Manire to take any formal action regarding plaintiff's complaints, Ms. Manire reported plaintiff's complaints (and complaints that Dana Underwood had made in the same time frame concerning Sheriff Daniels) to the County's EEO officer. At the same time, Ms. Manire advised the EEO officer that she herself had experienced firsthand Sheriff Daniels' practice of brushing the buttocks of female employees at the copy machine and forcing female employees to brush by him in the dispatch office doorway. At some point thereafter, Bob Eastman, the county counselor, approached Sheriff Daniels and told him that an allegation had been made about the Sheriff's "sexual misconduct in the office." According to Sheriff Daniels, other than telling him that an allegation had been made, Mr. Eastman stated only

If you're doing it quit, if you're not don't. Excuse me, I got to split. There you go. Thank you.

Sheriff Daniels further testified that he did not modify his behavior in any way as a result of the conversation with Mr. Eastman.

Once plaintiff transferred to the night shift in March 1999, she had considerably less contact with Sheriff Daniels. According to plaintiff, while the nature and frequency of Sheriff Daniels' harassing conduct changed after plaintiff's transfer to the night shift, Sheriff Daniels continued

3. Plaintiff's affidavit also contains numerous statements about Sheriff Daniels' alleged sexual harassment of Dana Underwood, one of plaintiff's coworkers. The problem with these statements, however, is that they reflect that plaintiff did not herself witness the conduct-only that Ms. Underwood "discussed" the conduct with plaintiff. While it is true that incidents of sexual harassment directed at others and not the plaintiff can have some relevance in demonstrating the existence of a hostile work environment, see, e.g., Hirase–Doi v. U.S. West Communications, Inc., 61 F.3d 777, 782 (10th Cir.1995), it is also true that "second-hand harassment" is "obviously not as great as the impact of harassment directed at the plaintiff." Cowan v. Prudential Ins. Co. of Am., 141 F.3d 751, 758 (7th Cir.1998). In any event, the court need not address plaintiff's allegations concerning Ms. Underwood in light of its conclusion that, even in the absence of the allegations concerning Ms. Underwood, plaintiff has come forward with sufficient evidence to survive summary judgment. The court leaves open the possibility, however, that evidence concerning the alleged harassment of Ms. Underwood by Sheriff Daniels may be admissible at trial.

to harass and intimidate plaintiff on those limited occasions when they did have contact. For example, plaintiff averred that on one occasion after she began working the night shift, Sheriff Daniels crept into the dispatch office late at night (he was not scheduled to be at work at the time) and deliberately frightened plaintiff. According to plaintiff, Sheriff Daniels did this to "punish" her for making complaints about his conduct. According to Sheriff Daniels, he came to the office unannounced in order to observe plaintiff working, as he had received complaints from deputies that plaintiff either did not respond to their radio transmissions or could not hear their transmissions because the volume on the television in the dispatch office was set too high. Sheriff Daniels testified that when he came to the dispatch office, he found that plaintiff was watching television and that the television, contrary to Sheriff Daniels' policy, was not set on the Weather Channel.

After this late-night incident, Sheriff Daniels placed a note with plaintiff's name on it in the dispatch area reminding plaintiff that the television set was to remain on the Weather Channel. Plaintiff testified that she was humiliated by this note and that the note served as a constant reminder of the night he came to scare her. Sheriff Daniels also instructed plaintiff to leave the three monitors in the dispatch office on the "scan" setting, apparently so that Sheriff Daniels could observe plaintiff working. Plaintiff feared that Sheriff Daniels was watching her through the monitors and, thus, disregarded his instructions to leave the monitoring system on "scan." On another occasion, Sheriff Daniels screamed at plaintiff for answering the telephone in the dispatch room when she was not yet on duty for dispatch.

On September 15, 1999, plaintiff received a six-month evaluation of her performance in the full-time dispatcher position. Shirley Webber, plaintiff's supervisor since June 1, 1999, completed the evaluation and, based on the substance of the evaluation, decided to terminate plaintiff's employment. According to Ms. Webber, plaintiff suffered from a variety of performance problems, including attendance and tardiness problems, complaints from deputies that the radio traffic was not being answered in a timely fashion, failing to complete overnight paperwork, using the teletype to conduct personal business and repeatedly changing the settings on the state NCIC computer, causing it to crash and remain offline for 8 hours. Ms. Webber further testified that on one occasion, plaintiff instructed a deputy on duty to call the dispatch office on the telephone for information regarding a prowler rather than simply using the radio to advise the deputy of the situation. This required the deputy to leave his patrol area to find a telephone when, in fact, the prowler was spotted in the deputy's patrol area. In other words, the prowler may have been caught but for plaintiff's insistence that the deputy find a telephone to call the dispatch office. Other complaints about plaintiff's performance were based on plaintiff's refusal to leave the video monitors on the "scan" function, switching the television from the Weather Channel, setting the television volume too loud to hear radio traffic, and watching movies while on duty.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to

the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir.2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler,* 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *accord Eck v. Parke,*

*Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

In the pretrial order, plaintiff first contends that she was transferred to the night shift, placed on probationary status at that time, and ultimately discharged based on her race, gender and/or in retaliation for making complaints about Sheriff Daniels' conduct. Plaintiff also contends that she was subjected to sexual and racial harassment at the hands of Sheriff Daniels. Plaintiff's discriminatory and/or retaliatory discharge, transfer and placement-on-probation claims, as well as her harassment claims, are all asserted under both Title VII and section 1983. To the extent these claims are asserted under Title VII, they are asserted only against the County. To the extent they are asserted under section 1983, they are asserted against both the County and Sheriff Daniels. Finally, plaintiff claims that the County breached an implied contract of employment when it terminated her employment.

● *Discriminatory and/or Retaliatory Discharge* [4]

4. In their motion, defendants initially argued that plaintiff's discriminatory and retaliatory

In the pretrial order, plaintiff asserts that defendants terminated her employment based on her race and/or gender and/or in retaliation for plaintiff's complaints of discrimination and harassment. As plaintiff concedes that she has no direct evidence of discrimination or retaliation, the court analyzes her claims under the burden-shifting approach established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See English v. Colorado Dep't of Corrections*, 248 F.3d 1002, 1007 (10th Cir.2001); *McGarry v. Board of County Comm'rs*, 175 F.3d 1193, 1201 (10th Cir. 1999).[5] To survive summary judgment, then, plaintiff bears the initial burden of establishing a prima facie case by a preponderance of the evidence. *See English*, 248 F.3d at 1008. If plaintiff establishes her prima facie case, the burden shifts to defendants to articulate some legitimate, nondiscriminatory reason for the decision to terminate plaintiff's employment. *Id.* If defendants successfully meet their burden of production, then plaintiff can avoid summary judgment only if she is able to put forth evidence sufficient to allow a reason-able jury to find that defendants' reasons are pretextual. *Id.*

■ In support of their motion for summary judgment, defendants urge that plaintiff cannot establish a prima facie case of discriminatory discharge because she cannot establish that similarly situated employees outside the protected class were treated differently than plaintiff. This argument, however, ignores Tenth Circuit precedent establishing that a plaintiff does not have to show differential treatment of similarly situated persons outside the protected class to meet the initial prima facie burden under *McDonnell Douglas*. *See id.* (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1228–29 (10th Cir.2000)). Rather, to meet her prima facie burden, plaintiff need only show that she belongs to a protected class; she was qualified for her job; despite her qualifications, she was discharged; and her job was not eliminated after her discharge. *See id.* Thus, in the absence of any other arguments concerning plaintiff's prima facie case, defendants' motion for summary judgment with respect to this issue is denied.[6]

discharge claims are time-barred to the extent those claims are brought under Title VII because, according to defendants, plaintiff's EEOC charge was filed more than 300 days after her discharge. In her response, plaintiff contends that she filed a sufficient charge on June 29, 2000, relying on 29 C.F.R. § 1601.12(b), which provides that a "charge is sufficient when the commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." In their reply, defendants concede that the Tenth Circuit has held that a subsequently filed formal charge may amend the plaintiff's unverified but timely filed EEOC "complaint" under 29 C.F.R. § 1601.12(b), at least where there is no showing of prejudice to the charged party. *See Peterson v. City of Wichita*, 888 F.2d 1307, 1308–09 (10th Cir.1989). Nonetheless, defendants urge that the regulation is contrary to the language of the statute and is void. The

court, of course, is bound by circuit precedent, *see United States v. Spedalieri*, 910 F.2d 707, 709 n. 2 (10th Cir.1990), and thus, deems plaintiff to have filed a sufficient charge on June 29, 2000.

5. The *McDonnell Douglas* framework also applies to plaintiff's claims brought under section 1983 and the court's legal analysis is the same. *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir.1991) ("[T]he elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas*, whether that case is brought under §§ 1981 or 1983 or Title VII."); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n. 1, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (assuming that *McDonnell Douglas* framework applies to § 1983 actions).

6. Defendants do not even make any arguments regarding plaintiff's prima facie case of

The burden, then, shifts to defendants to produce evidence of a legitimate nondiscriminatory reason for plaintiff's discharge. According to defendants' evidence, defendants discharged plaintiff based on a variety of performance-related issues including, among other things, plaintiff's absenteeism; tardiness; watching TV movies while on duty; switching the video monitors in the dispatch office from the "scan" function to the "locked" function; and changing the settings on the state NCIC computer. Defendants have satisfied their "exceedingly light" burden to provide a nondiscriminatory reason for their actions. *See Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir.1999).

Plaintiff argues that she has submitted sufficient evidence for a reasonable jury to conclude that defendants' proffered reasons are pretextual. Specifically, plaintiff contends that defendants acted contrary to an unwritten policy or to County practice in deciding to terminate her employment in that she was treated differently from other similarly situated employees who violated work rules of comparable seriousness. This is clearly an acceptable method of showing pretext. *See English,* 248 F.3d at 1009. The problem, however, is that plaintiff's evidence regarding similarly situated employees is wholly inadequate. Plaintiff's only evidence in that regard is found in two statements in her affidavit. The first statement, in its entirety, is that "[s]imilar behavior from other employees was not treated in the same manner." This allegation is conclusory, vague and unsupported by reference to

specific facts. As plaintiff has failed to support this allegation with the requisite evidentiary detail, it is insufficient to defeat defendants' motion for summary judgment. *See Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 800 (10th Cir.1993) ("In order to defeat summary judgment, the nonmoving party must do more than assert conclusory allegations;" plaintiff must allege "concrete facts"). In the second statement, plaintiff avers that she was punished far more severely for the same behavior exhibited by other employees. For instance, Dave Marlow was frequently found to be sleeping on the job and had many complaints registered about his performance. However, his evaluations were always good; he received a larger salary than me and he was not terminated for any of his mistakes.

Significantly, the record is devoid of any other evidence concerning Mr. Marlow's work performance, including evidence concerning "mistakes" made by Mr. Marlow or "complaints" made about Mr. Marlow's performance. In other words, the court has no information concerning the number of times that Mr. Marlow was found "sleeping on the job" and no information concerning whether Mr. Marlow's sleeping caused him to miss dispatch calls or otherwise interfered with his ability to monitor radio traffic. There is simply no evidence concerning the nature, extent or effect of Mr. Marlow's "sleeping on the job." Plaintiff's single statement concerning Mr. Marlow, then, is insufficient to permit a

---

retaliatory discharge. To establish a prima facie case of retaliatory discharge, plaintiff must demonstrate that she engaged in protected activity; defendants terminated her employment; and a causal connection exists between plaintiff's protected activity and her discharge. *See O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1252 (10th Cir.2001) (citations omitted). As there is no "similarly situated" prima facie requirement in the retaliatory discharge context, and defendants' motion with respect to plaintiff's prima facie case speaks only to whether plaintiff has come forward with evidence of "similarly situated" employees, the motion is denied with respect to plaintiff's prima facie case of retaliation.

jury to conclude that Mr. Marlow's conduct was of comparable seriousness to plaintiff's performance problems.

■ The only other argument advanced by plaintiff in an effort to show that defendants' proffered reasons are pretextual appears to be directed solely at her retaliatory discharge claim. In that regard, plaintiff contends that defendants did not document any complaints about plaintiff's work performance until after plaintiff complained about Sheriff Daniels' conduct. Plaintiff complained to Ms. Manire about Sheriff Daniels' conduct in March 1999. She received her negative performance evaluation (the basis of her subsequent discharge) in September 1999–nearly six months after making her complaint. Although the Tenth Circuit has held that protected conduct closely followed by adverse action may support an inference for retaliatory motive, *see Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996), the circuit has underscored that unless the employer's adverse action "is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation." *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999) (citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997)). The circuit, for example, has held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. *See id.* (citing *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir.1994)). By contrast, the circuit has held that a three-month period, standing alone, is insufficient to establish causation. *See id.* (cit-

ing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir.1997)).

The six-month gap between plaintiff's complaint of harassment and her performance evaluation, standing alone, is clearly insufficient to establish the requisite causation. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1234 (10th Cir. 2000) (plaintiff failed to establish causal connection between his complaints to management and his discharge because the complaints, occurring six months prior to his discharge, were remote in time). Moreover, the vast majority of the complaints about plaintiff's performance were based specifically on plaintiff's performance in the full-time dispatcher position-a position that she did not assume until well after she complained about Sheriff Daniels' conduct. Thus, the mere fact that there were no documented complaints about plaintiff's performance until after she complained ·about Sheriff Daniels, standing alone, is insufficient to suggest that defendants' criticisms of plaintiff's performance were a pretext for discrimination or retaliation. Finally, plaintiff has failed to come forward with any additional evidence from which a reasonable jury could draw an inference of retaliation. Plaintiff's final evaluation, for example, was completed by Shirley Webber and Ms. Webber was the individual who decided to terminate plaintiff's employment based on the substance of the evaluation she had completed.[7] There is simply no evidence in the record suggesting that Ms. Webber's actions were motivated by complaints made by plaintiff concerning Sheriff Daniels. There is also no evidence in the record suggesting that the complaints concerning plaintiff's performance as a full-

---

7. While Ms. Webber did discuss with Sheriff Daniels plaintiff's evaluation and the decision to terminate plaintiff's employment, Ms. Webber's deposition testimony clearly indicates that she completed the evaluation form and determined that plaintiff's employment should be terminated prior to discussing the matter with Sheriff Daniels.

time dispatcher were unfair, unwarranted or otherwise untrue. In the absence of any other evidence regarding causation, plaintiff is left only with the six-month gap between her protected conduct and her final performance evaluation and discharge. Thus, no reasonable jury could conclude that defendants' criticisms of plaintiff's performance were a pretext for retaliation and summary judgment is appropriate on this claim.

- *Discriminatory and/or Retaliatory Transfer to Night Shift and Placement on Probationary Status*

■ Plaintiff also claims that defendants' decisions to transfer plaintiff to the night shift and to place plaintiff on probation at that time were based on plaintiff's race and/or gender and/or in retaliation for plaintiff's complaints of discrimination and harassment. These particular claims, however, are time-barred and, thus, summary judgment in favor of defendants is appropriate with respect to these claims.

Under Title VII, a plaintiff must file an administrative charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." *See Goodwin v. General Motors Corp.,* 275 F.3d 1005, 1009 (10th Cir.2002) (citing *Martin v. Nannie & the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993)); 42 U.S.C. § 2000e–5(e)(1).[8] A claim is time barred if it is not filed within these time limits. *National Railroad Passenger Corp. v. Morgan,* —— U.S. ——, ——, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002). Recently, the Supreme Court considered whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside the 300–day statutory time period. *Morgan,* —— U.S. at ——, 122

S.Ct. at 2068. According to the Supreme Court in *Morgan,* Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Id.* at 2068. Specifically, the court held:

A discrete retaliatory or discriminatory act "occurred" on the day that it "happened." A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.

*Id.* at 2070–71. The Court further emphasized that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 2072. The Court noted, however, that the statute does not bar an employee from using time-barred acts as background evidence in support of a timely claim. *Id.*

■ Bearing these rules in mind, only those acts that occurred no more than 300 days before June 29, 2000, the day that plaintiff filed her charge, are actionable. Thus, plaintiff's claims concerning her transfer and her placement on probationary status-both of which occurred on March 27, 1999–are not actionable. Similarly, to the extent these claims are brought under section 1983, they are also time-barred. Plaintiff's complaint was filed on July 25, 2001–more than two years after her transfer and placement on probationary status. *See Hamilton v. City of Overland Park,* 730 F.2d 613, 614 (10th Cir.1984) (holding that the two-year statute of limitations in Kan. Stat. Ann § 60–513(a)(4) should be applied to section 1983 claims).

---

**8.** The 300–day time period is utilized in those states that have entities with the authority to grant or seek relief with respect to unlawful employment practices and an employee files a grievance with that agency; in all other states, the charge must be filed within 180 days. *See National Railroad Passenger Corp. v. Morgan,* —— U.S. ——, ——, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002).

• *Harassment*

With respect to plaintiff's harassment claims, defendants first challenge those claims as untimely under both Title VII and section 1983. The court's analysis of whether plaintiff's harassment claims are timely for purposes of Title VII is again governed by the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan,* —— U.S. ——, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In *Morgan,* the Court noted that "[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." *Id.* at 2073. Based on this distinction, the Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *Id.* at 2068. As the Court explained:

> The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative affect of individual acts.

*Id.* at 2073. (citation omitted).

Plaintiff's charge was filed on June 29, 2000. Thus, "so long as any act contributing to [the] hostile environment takes place within" the 300 days prior to June 29, 2000, plaintiff's harassment claims will be deemed timely. Plaintiff alleges that

Sheriff Daniels' harassment of her continued into the summer of 1999, though it was not as frequent after her transfer to the night shift. The record is undeveloped, however, on the issue of the specific timing of Sheriff Daniels' acts. In short, then, material factual issues exist with respect to whether Sheriff Daniels committed any act that contributed to the alleged hostile work environment in the 300–day period prior to June 29, 2000. These facts need to be developed at trial. Summary judgment on this point is denied.

Similarly, to the extent plaintiff's harassment claims are brought under section 1983, genuine issues of material fact exist with respect to the timeliness of the claims.[9] As stated earlier, plaintiff's complaint was filed on July 25, 2001. For the same reasons set forth above, factual issues exist with respect to whether any act contributing to the alleged hostile environment occurred within the two-year period prior to July 25, 2001. *See Hamilton v. City of Overland Park,* 730 F.2d 613, 614 (10th Cir.1984) (holding that the two-year statute of limitations in Kan. Stat. Ann § 60–513(a)(4) should be applied to section 1983 claims).

Assuming that the facts developed at trial are sufficient for a reasonable jury to conclude that some act contributing to plaintiff's harassment claim took place within the 300–day (or two-year) window and that other acts upon which her claim depends that occurred outside the relevant time period are part of the same actionable claim, then the jury must also consider the merits of plaintiff's harassment claims, for

**9.** Defendants maintain-in a single sentence-that the continuing violation theory does not apply to claims brought under section 1983. Defendants, however, have not developed this argument to any extent. As the Tenth Circuit has never expressly addressed the argument, *see Holmes v. Regents of the Univ. of Colo.,* 1999 WL 285826, at \*3 n. 2, 176 F.3d 488

(10th Cir.1999), the court declines to address the argument without further briefing from the parties on this issue. While defendants are not permitted to file a renewed motion for summary judgment on this issue, the parties may brief the issue in connection with the trial of this case.

despite defendants' argument to the contrary, the court cannot resolve the merits of these claims in favor of defendants on summary judgment.[10] According to defendants, there is "no evidence that the plaintiff was subjected to an objectively hostile work environment." This statement is simply incorrect. Certainly, plaintiff has come forward with evidence from which a jury could conclude that plaintiff endured a hostile working environment. Summary judgment is denied on this point.

- *The County's Liability for Sheriff Daniels' Conduct*

The County maintains that it is entitled to summary judgment as it cannot be held liable for the acts of Sheriff Daniels under either Title VII or section 1983. The court begins with the County's liability under Title VII.

- Title VII

■ The County urges that, even assuming plaintiff survives summary judgment on the merits of her harassment claims, it is nonetheless entitled to summary judgment on these claims to the extent the claims are brought under Title VII because it cannot be held vicariously liable for the acts of Sheriff Daniels.[11] In support of its argument, the County relies exclusively on the affirmative defense set forth by the Supreme Court in *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In other words, the County maintains that summary judgment is warranted against plaintiff because it took no tangible employment action against her, it exercised reasonable care to prevent and correct promptly any sexual harassment in the workplace, and plaintiff unreasonably failed to take advantage of corrective opportunities provided to her by the County. *See Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1024 (10th Cir.2001).

The County's motion is denied on this issue. Even assuming that defendants took no tangible employment action against plaintiff,[12] at the very least factual issues exist with respect to whether the County exercised "reasonable care to prevent and correct promptly" the alleged sexual harassment in the workplace. In that regard, the evidence in the record reflects that after plaintiff (and others) complained about Sheriff Daniels' conduct, Bob Eastman, the county counselor, approached Sheriff Daniels and told him that an allegation had been made about the Sheriff's "sexual misconduct in the office." According to Sheriff Daniels, other than telling him that an allegation had been made, Mr. Eastman stated only

If you're doing it quit, if you're not don't. Excuse me, I got to split. There you go. Thank you.

Sheriff Daniels further testified that he did not modify his behavior in any way as a result of the conversation with Mr. East-

10. Actually, defendants, perhaps due to mere oversight, do not move for summary judgment on the merits of plaintiff's racial harassment claim.

11. While Sheriff Daniels is not an "employee" of the County (he is an elected county official pursuant to K.S.A. § 19–801a), vicarious liability is nonetheless an appropriate theory of liability as Sheriff Daniels is an agent of the County. *See Owens v. Rush*, 636 F.2d 283, 286 (10th Cir.1980).

12. Plaintiff contends that there were at least two tangible employment actions taken against her-her transfer to the night shift and her placement on probation at that time. The court declines to address whether these two acts constitute tangible employment actions based on its conclusion that the County is not entitled to summary judgment on the affirmative defense in any event.

man. Sheriff Daniels had no recollection of speaking with anyone else about allegations of sexual harassment or his behavior in the workplace. Based on this evidence, a reasonable jury could certainly conclude that the County's response to plaintiff's complaints was not an adequate one. Summary judgment is denied.[13]

● Section 1983

 The County moves for summary judgment on the issue of its liability under section 1983 for Sheriff Daniels' alleged acts of harassment. According to the County, there is simply no evidence in the record from which a reasonable jury could conclude that a policy or custom of the County caused plaintiff's injuries. As set forth below, the court concludes that plaintiff has not come forward with sufficient evidence demonstrating the existence of a policy or custom of sexual harassment. Thus, the motion is granted on this issue.

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Municipalities, such as the County, are considered "persons" to whom section 1983 liability applies. *See Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir.1996) (citing *Monell v. Dep't of Social Servs. of City of New York*, 436

U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *accord Sauers v. Salt Lake County*, 1 F.3d 1122, 1129 (10th Cir.1993). Sexual harassment can violate the Fourteenth Amendment right to equal protection of the laws thus triggering a section 1983 cause of action. *Id.* (citing *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir.1989)).

A county may be liable under section 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir.1998). Thus, a plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove that a municipal policy or custom was the moving force behind the constitutional deprivation. *Myers v. Oklahoma County Board of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir.1998) (citing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018). That is, a plaintiff must show that the municipal action was taken with the requisite causal link between the municipal action and the deprivation of federal rights. *Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Plaintiff here does not allege the existence of any such policies. There is certainly no evidence in the record that Sheriff Daniels acted in accordance with an official policy of the County in connection with his conduct or actions toward plaintiff. Similarly, there is no evidence (and plaintiff does not allege) that the County has an official policy sanctioning sexual or racial harassment of employees; rather, the County has an official policy against harassment of employees. *See Lankford*,

---

13. In any event, plaintiff's papers suggest that she is attempting to hold the County liable for Sheriff Daniels' conduct under two separate and distinct theories-a vicarious liability theory and a negligence theory. The affirmative defense set forth in *Faragher* and *Ellerth* is not available to an employer when a plaintiff seeks to hold that employer liable under a negligence theory. *See Wilson v. Tulsa Junior College*, 164 F.3d 534, 540–41 & n. 4 (10th Cir.1998); *Wright–Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1270–71 (10th Cir.1998).

73 F.3d at 286 (affirming grant of summary judgment and holding that City not liable under section 1983 for sexual harassment by former police chief where, inter alia, there was no evidence that the City had an official policy favoring sexual harassment and, in fact, the City had a written policy expressly forbidding it). In short, because Sheriff Daniels' alleged "acts of harassment were personal in nature without any indicia of being 'officially sanctioned or ordered,'" the court concludes that his harassment (if any) of plaintiff does not rise to the level of official County "policy." *See Starrett,* 876 F.2d at 820 (reversing jury verdict and holding that it was error for the district court to deny the County's motion for judgment notwithstanding the verdict on the issue of the County's liability for sexual harassment under § 1983; supervisor's acts of "personal harassment" of county employee did not rise to level of official County policy where acts were clearly private rather than official acts).

However, even if Sheriff Daniels' alleged acts of harassment do not rise to the level of an official policy, "it is still possible that a widespread and persistent practice of sexual harassment in a municipal department could constitute the 'custom' of a municipality." *Id.* To establish a "custom," plaintiff must prove: (1) the existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the County's employees; (2) deliberate indifference to or tacit approval of such misconduct by the County's policymaking officials after notice to the officials of that particular misconduct; and (3) that plaintiff was injured by virtue of the unconstitutional acts pursuant to the County's custom and that the custom was the moving force behind the unconstitutional acts. *Gates v. Unified Sch. Dist. No. 449 of Leavenworth County, Kansas,* 996 F.2d 1035, 1041 (10th Cir.1993).

The evidence in the record before the court does not demonstrate that a widespread practice existed. Instead, the evidence suggests that Sheriff Daniels engaged in personal acts of sexual harassment directed at a few specific females in the office; there is no indication that sexual harassment by others in the office was tolerated or that it even occurred. *See Starrett,* 876 F.2d at 820 (reversing finding of section 1983 liability of County where supervisor "repeatedly made sexual advances toward plaintiff and other female employees;" evidence insufficient to establish widespread practice of permitting sexual harassment where there was no evidence that harassment by others occurred and harassment was directly only at a few individuals in the office). Simply put, no reasonable jury could find, based on the facts presented here, the existence "of a pattern of persistent and widespread unconstitutional practices that had become so permanent and well-settled as to have the force and effect of law." *See Gates,* 996 F.2d at 1042 (affirming grant of summary judgment on issue of District's section 1983 liability where the "pattern of misconduct alleged" was "not so permanent and well settled as to have the effect and force of law"); *accord Lankford,* 73 F.3d at 286–87 (affirming grant of summary judgment on issue of City's section 1983 liability for harassment by former police chief of two females in the office; plaintiffs did not allege sexual harassment other than that committed by former police chief at very specific times and places against certain female employees); *Sauers,* 1 F.3d at 1129 (affirming entry of judgment for County on section 1983 liability for sexual harassment by County Attorney of secretary; no "practice" or "custom" of permitting sexual harassment where plaintiff complained only of

specific acts by one individual during a specific time frame). Summary judgment, then, is granted.

● *Implied Contract of Employment*

■ In the pretrial order, plaintiff alleges that the County, by terminating her employment, breached an implied contract of employment. The County moves for summary judgment on this claim on the grounds that plaintiff has set forth no evidence demonstrating that her employment with the County was anything other than "at will." The court agrees with the County and concludes that plaintiff has not carried her evidentiary burden to show that there are any issues of material fact to be resolved by a jury regarding whether an implied contract existed.

■ The question of whether an implied contract exists under Kansas law is typically a question of fact for the jury. *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 537 (10th Cir.1995). Summary judgment is not precluded, however, where there is no showing of liability as a matter of law, where there are no essential facts in dispute, and where "the plaintiff presents only evidence of his own unilateral expectations of continued employment." *Kastner v. Blue Cross & Blue Shield of Kan., Inc.*, 21 Kan.App.2d 16, 24, 894 P.2d 909 (1995) (quoting *Conyers v. Safelite Glass Corp.*, 825 F.Supp. 974, 977 (D.Kan. 1993)).

■ To determine whether an implied employment contract exists, the Kansas Supreme Court directs courts to look to the intent of the parties:

> Where it is alleged that an employment contract is one to be based upon the theory of 'implied in fact,' the understanding and intent of the parties is to be ascertained from several factors which include written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the

situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.

*Morriss v. Coleman Co.*, 241 Kan. 501, 513, 738 P.2d 841 (1987). For an implied employment contract to exist, both parties must intend to enter into a contract with terms other than employment at-will. *See Allegri v. Providence–St. Margaret Health Center*, 9 Kan.App.2d 659, 663, 684 P.2d 1031 (1984) ("A contract implied in fact arises from facts and circumstances showing mutual intent to contract.").

In her brief, plaintiff urges that she has established an implied contract based in large part on statements from her supervisors, who allegedly told her that her employment was expected to be long-term; that she would only be terminated for cause; and that she would only be terminated after certain procedures had been invoked. Plaintiff fails, however, to direct the court to any evidence of these statements. In fact, aside from these bald assertions in the argument section of her brief, the court cannot find in the record any reference whatsoever to any statements allegedly made to plaintiff regarding continued employment or entitlement to progressive discipline. Moreover, plaintiff has not controverted certain significant facts set forth by defendants-namely, that plaintiff "was never promised employment for any specific length of time" and that she "was not told that as long as she did her job she would have her job, nor any words to that effect." Thus, the court must disregard plaintiff's references to any alleged statements by her supervisors.

Plaintiff also asserts that she had an implied contract of employment based on

language in the County's personnel handbook and based on the County's course of conduct indicating that an employee is entitled to a "step system" of discipline prior to dismissal. With respect to plaintiff's argument concerning the handbook, however, the plain language of the handbook indicates that supervisors may utilize any of four disciplinary actions (*i.e.*, verbal reprimand; written reprimand; suspension without pay; and dismissal) but that the supervisor need not utilize these actions in progression. In other words, the handbook clearly permits a supervisor to exercise his or her discretion and proceed directly to dismissal if the circumstances warrant such action. Moreover, the handbook contains a clear disclaimer concerning the nature of the employment relationship:

Neither the employee nor the County is bound to continue the employment relationship if either chooses, at its will, to end the relationship at any time.

\* \* \* \*

These classifications do not guarantee employment for any specified period of time. Accordingly, the right to terminate the employment relationship at any time is retained by both the employee and the County.

It is undisputed that plaintiff read the contents of the handbook, including the disclaimer language. These facts severely undercut the merits of plaintiff's claim. *See Kastner*, 21 Kan.App.2d at 28–29, 894 P.2d 909 (where the plaintiff admits reading a disclaimer contained in the employee manual which states that the policies of the manual are not intended to create an implied contract of employment, the disclaimer is dispositive of the question of whether the employee intended to form a contract with the plaintiff). Finally, plaintiff's assertion that the County's "course of conduct" indicates entitlement to progressive discipline is without support in the record.

Plaintiff contends in her argument that "other employees were sent through the step program of verbal and written reprimands and suspensions without pay prior to termination," but the court can find no evidence supporting this assertion in the record and plaintiff directs the court to none.

In sum, the record is devoid of evidence establishing or even suggesting that plaintiff enjoyed an implied contract of employment. Because plaintiff has failed to meet her burden of coming forward with evidence of disputed material facts, summary judgment in favor of the County on this claim is appropriate.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion for summary judgment (doc. # 34) is **granted in part and denied in part.** Specifically, the motion is **granted** with respect to plaintiff's discrimination and retaliation claims relating to her transfer, her placement on probation and her discharge. The motion is also **granted** with respect to plaintiff's claim that the County breached an implied contract of employment. The motion is **denied** with respect to plaintiff's claims of racial and sexual harassment; is **denied** with respect to the issue of the County's liability under Title VII; and is **granted** with respect to the issue of the County's liability under section 1983.

**IT IS SO ORDERED.**